UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PARK WEST GALLERIES, INC.,

        CASE NO. 08-12247
   Plaintiff,        HON. LAWRENCE P. ZATKOFF

vs.

BRUCE HOCHMAN, FINE ART
REGISTRY and THERESA FRANKS,

   Defendants.
                                           /

**OPINION AND ORDER**

AT A SESSION of said Court, held in the
United States Courthouse, in the City of Port Huron,
State of Michigan, on March 19, 2009

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

This matter is before the Court on the Motion to Dismiss for Lack of Personal Jurisdiction and/or Improper Venue Pursuant to Fed. R. Civ. P. 12(b)(2) and (b)(3), or, In the Alternative, for Transfer of Venue Pursuant to 28 U.S.C. §1406 (Docket #24). The parties have fully briefed the issues. The Court finds that the facts and legal arguments pertinent to the Motion are adequately presented in the parties' papers, and the decision process will not be aided by oral arguments. Therefore, pursuant to E.D. Mich. Local R. 7.1(e)(2), it is hereby ORDERED that the Motion be resolved on the briefs submitted, without this Court entertaining oral arguments. For the reasons that follow, the Motion is DENIED IN PART and GRANTED IN PART.

## II. BACKGROUND

Plaintiff, a Michigan corporation, is a private art gallery that conducts business throughout the United States and, at least as it pertains to the sale of art on cruise ships, throughout the world. Defendant Fine Art Registry, LLC, an Arizona limited liability company ("FAR"), operates a

website dedicated to, in part, exposing fraudulent practices and unethical behavior in the art world. Defendant Theresa Franks ("Franks") is an owner of FAR. Defendant Bruce Hochman ("Hochman"), who performs appraisals of Salvador Dali art works, is retained as an expert by FAR. In 2007, Hochman participated in an interview with David Phillips ("Phillips"). Plaintiff alleges that the content of many articles published on the FAR website is false and defamatory as to Plaintiff, including (1) some statements made by Hochman in his interview with Phillips, (2) many articles written by Phillips, and (3) other articles that identify Phillips as the Publications Director.

### III. ANALYSIS

**A.   Personal Jurisdiction**

*1.   Standard of Review*

The initial thrust of the Motion to Dismiss is an alleged lack of personal jurisdiction, which this Court treats as a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2). It is well settled that Plaintiff bears the burden of establishing that personal jurisdiction exists in this Court. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) (citing *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)); *accord Am. Greeting Corp. v. Cohn*, 839 F.2d 1164, 1168 (6th Cir. 1988); *Weller v. Commwell Oil Co.*, 504 F.2d 927, 929 (6th Cir. 1974).

Once a defendant has filed a properly supported motion for dismissal, plaintiff "may not stand on . . . [its] pleadings, but must, by affidavit or otherwise, set forth specific facts showing that the court has [personal] jurisdiction [over defendant]." *Theunissen*, 935 F.2d at 1458 (citing *Weller*, 504 F.2d at 930). Here, FAR and Franks have filed a properly supported motion for dismissal, and each party has submitted numerous documents in support of its respective position.

Accordingly, the Court has before it a properly supported Fed. R. Civ. P. 12(b)(2) motion and opposition thereto. At this stage of the proceedings, the Court has three options:

> [I]t may decide the motion upon the affidavits alone; it may permit discovery in aid of deciding the motion; or it may conduct an evidentiary hearing to resolve any apparent factual questions.

*Theunissen*, 935 F.2d at 1458 (citing *Serras v. First Tennessee Bank Nat. Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989)). It is within the Court's discretion to decide which method it will employ in deciding the motion. *Theunissen*, 935 F.2d at 1458 (citations omitted). However,

> the method selected will affect the burden of proof the plaintiff must bear to avoid dismissal. . . . Where the court relies solely on the parties' affidavits to reach its decision, the plaintiff must make only a *prima facie* showing that personal jurisdiction exists in order to defeat dismissal.

*Id*. (citations omitted). In addition, "the pleadings and affidavits submitted on a 12(b)(2) motion are received in a light most favorable to the plaintiff." *Id*. at 1459 (citations omitted). "[T]he court disposing of a 12(b)(2) motion . . . [cannot] weigh the controverting assertions of the party seeking dismissal." *Id*. (citations omitted). Because the Court will decide the instant motion on the pleadings submitted, the Court will analyze the instant motion to determine whether Plaintiff has made a prima facie showing that personal jurisdiction exists.

   2.   *Michigan Long-Arm Statute and Due Process*

Under F.R.C.P. 4(e), the Court must look to the Michigan long-arm statute, M.C.L.A. § 600.715, to determine whether personal jurisdiction exists in the case at bar. M.C.L.A. § 600.715 provides, in pertinent part:

> The existence of any of the following relationships between an individual or his agent and the State shall constitute a sufficient basis of jurisdiction to enable a Court of record of this State to exercise limited personal jurisdiction over the individual and to enable the Court to render personal judgments against the individual or his representative arising out of an act which creates any of the following relationships:
>
>    (1)  The transaction of any business within the State.
>
>    (2)  The doing or causing any act to be done, or consequences to occur, in the state, resulting in an action for tort.

In *Sifers v. Horn*, 385 Mich. 195 (1971), the Michigan Supreme Court stated that the phrase "transaction of any business within the State" found in M.C.L.A. § 600.715 "means just what it says. It includes 'each' and 'every' . . . . It comprehends the 'slightest'" contact. *Id*. at 199 n.2. *See also*

3

*Lanier v. American Bd. of Endodontics*, 843 F.2d 901, 905-906 (6th Cir. 1988). "However, constitutional concerns of due process limit the application of this state law." *Theunissen*, 935 F.2d at 1459 (citation omitted). A defect in the Due Process considerations "would foreclose the exercise of personal jurisdiction even where a properly construed provision of the long-arm statute would permit it." *Id.* The relevant criteria for Due Process consideration (the "*Mohasco* requirements") are:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Theunissen*, 935 F.2d at 1460 (quoting *LAK, Inc. v. Deer Creek Enterprises*, 885 F.2d 1293, 1299 (6th Cir. 1989), *cert. denied*, 494 U.S. 1056 (1990)) (citing *Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)).

   *3.   Personal Jurisdiction is Authorized by Michigan Law as to FAR but not Franks*

In Paragraphs 11, 12, 24, 25, 26 and 28 of its Complaint, Plaintiff makes allegations regarding FAR's and Frank's connections to Michigan as follows:

   11.   Defendants FAR and Franks operate an internet website through which art buyers, including those in Michigan, are encouraged to register their purchases, and artists, including those in Michigan, are encouraged to register their artwork. Clients pay an annual $9.95 membership fee plus $2.25 each for numbered tags which are sent to the art owners and artists to be affixed to their artwork.

   12.   As recently as April 2008, defendants FAR and Franks accepted membership registrations from both artists and collectors in Michigan. The registrants paid the registration fees for one year memberships and Defendants and Franks sent to them the FAR newsletter.

   24.   Beginning as early as May 2007, defendants FAR and Franks began a campaign of publishing defamatory statements regarding Park West that has continued for eleven months. . . . FAR and Franks have engaged at least four "authors," including Defendant[] Hochman, to assist in their smear campaign against Park West, and have set up a "FAR Forum" to encourage discussion and repetition of the defamatory statements.

   25.   In addition to publishing the defamatory statements through the FAR website, Defendants Franks and Hochman have actively sought out customers of Park West and repeated their defamatory statements to them. Defendants Franks and Hochman

4

> have on several occasions told customers of Park West that Salvador Dali artwork they had purchased from Park West was not authentic and urged and otherwise caused such customers to develop ill will, contempt, and distrust of Park West, to demand a refund of their purchase price for such art, and to have no further dealings with Park West.
>
> 26. On September 21, 2007, defendants FAR and Franks published on their website, an article by "author" David Phillips, containing false and defamatory statements about Park West, entitled "The Art Auction Afloat. Continuing a Long Tradition of Piracy on the High Seas. ... The only art auction operator discussed in this article is Plaintiff Park West. [Paragraphs 27, 30, 31 and 32 contain similar allegations regarding other articles]
>
> 28. On November 6, 2007, defendants participated in a staged "interview" on the FAR website in which an orchestrated and rehearsed set of "questions" were presented by Phillips to defendant Hochman, who claims to be an appraiser of art and "expert" in art by Salvador Dali []. In truth and in fact, defendant Hochman co-authored the "interview" with Phillips and throughout this staged "interview", defendants Hochman, FAR and Franks falsely and maliciously stated, directly and by innuendo, that plaintiff sells "fake" Salvador Dali art. ...

In its brief in opposition to the instant motion, Plaintiff attaches numerous articles published on the FAR website, each of which asserts that Plaintiff engages in fraudulent business practices. In addition, FAR's representatives have communicated with customers of Plaintiff who have sought to return art purchased from Plaintiff. Through such representatives, FAR has encouraged such customers to demand a full refund for the art purchased from Plaintiff because the art itself is fraudulent and/or because Plaintiff provided false information to such persons when selling the art.

In publishing articles critical of a Michigan corporation for a worldwide audience, the Court finds that FAR was "doing or causing an[] act to be done, or consequences to occur in [Michigan], resulting in an action for tort" (as has Plaintiff has filed here). *See Green v. Wilson*, 455 Mich. 342, 352 (1997) ("A plain language reading of those words reveals that either the tortious conduct or the injury must occur in Michigan"). If merely publishing the articles on the internet (which can be viewed by residents of any state, including Michigan) does not, in itself, constitute conduct occurring in Michigan, the correspondence of FAR's representatives with Plaintiff's customers suggesting that such customers attempt to get their money back from Plaintiff certainly causes injury to occur in Michigan.

The Court notes, however, that none of the aforementioned articles or correspondence was

authored by, or even addressed to, Franks. Franks is an Arizona resident who claims to have no contacts with the State of Michigan. Plaintiff has offered no evidence that Franks individually took any action directed at the forum state; rather, Plaintiff simply relies on the fact that she is an owner (and CEO) of FAR to demonstrate that this Court can exercise personal jurisdiction over her. An officer of a corporation does not, however, subject herself to personal jurisdiction simply by virtue of holding a such a position. *See Fakhoury Enterprises, Inc. v. J.T. Distributors*, 1994 U.S. Dist. LEXIS 7864 (E.D. Mich., March 8, 1994).

For the foregoing reasons, the Court concludes that (a) FAR's contacts with Michigan are sufficient to authorize the Court's exercise of personal jurisdiction over FAR pursuant to M.C.L.A. §600.715, but (b) Frank's contacts with Michigan are not sufficient to authorize the Court's exercise of personal jurisdiction over Franks pursuant to M.C.L.A. §600.715.

*4.     Due Process Not Offended As to FAR*

As the Sixth Circuit has recognized, however, the mere authorization of the laws of Michigan to exercise personal jurisdiction over a defendant is not enough. Rather,

> [i]n order to survive [the] motion to dismiss, [Plaintiff is] required to present a prima facie case that the . . . court's exercise of personal jurisdiction would not offend due process. [Plaintiff] therefore must establish with reasonable particularity sufficient minimum contacts with Michigan so that the exercise of jurisdiction over [Hochman] would not offend "traditional notions of fair play and substantial justice."

*Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 889 (6th Cir. 2002) (citations omitted). If Plaintiff can satisfy the *Mohasco* requirements, *supra*, due process will not be offended.

**a.     Purposeful Availment**

Based on the website operated by FAR, the Court finds that FAR engages in global marketing of its services, including to residents of Michigan. As Hochman is retained by FAR as an expert and the "interview" between he and Phillips was conducted for the purpose of being published on the FAR website, the Court finds that FAR purposefully availed itself of the privilege of acting in Michigan and/or causing consequences in Michigan as it relates to that interview.

6

Likewise, with respect to each of the articles written by Phillips published on the FAR website, the Court finds that FAR was purposefully availing itself of the privilege of acting in Michigan and/or causing consequences in Michigan as it related to those activities. Finally, when FAR's representatives directed persons to demand full refunds from Plaintiff with respect to purchases such persons had made from Plaintiff, FAR was purposefully availing itself of the privilege of acting in Michigan and/or causing consequences in Michigan. As such, the first *Mohasco* requirement is satisfied.

### b.     Cause of Action Connected to Michigan Activities

Plaintiff's cause of action is for (a) defamation, (b) tortious interference with Plaintiff's business relationships, and (c) interference with prospective business advantage. Each claim is based on alleged defamatory statements by made Hochman, Phillips and others and published on the FAR website. The alleged defamatory statements denied the authenticity of Salvador Dali artwork sold by Plaintiff, a Michigan corporation. If Plaintiff's allegations are true, those statements were published by FAR worldwide, including to persons in Michigan. Moreover, such statements would cause injury to Plaintiff's business in Michigan. Accordingly, the Court concludes that Plaintiff's cause of action arises from alleged activities of FAR directed at, and which allegedly have caused consequences to occur in, the forum state of Michigan.

### c.     Substantial Connections

The acts of FAR and the consequences of its acts must have a substantial enough connection with Michigan to make the exercise of jurisdiction over FAR reasonable here. *Air Products & Controls, Inc. v. Safetech Int'l Inc.*, 503 F.3d 544, 550 (6th Cir. 2007). For the reasons set forth above, FAR should reasonably anticipate being haled into court in Michigan as a result of the alleged conduct in which it engaged (*i.e.*, the Hochman/Phillips interview and the other Phillips' articles published on the FAR website, as well as the correspondence criticizing Plaintiff for fraudulent business practices and directing persons to seek full refunds from Plaintiff), for its "contacts with the forum proximately resulted from actions by the defendant himself that create a

substantial connection with the forum state." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (internal citations omitted). In addition, "where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477. FAR has not presented any such considerations to the Court. Accordingly, the Court finds that FAR's acts have substantial enough connections with the State of Michigan such that it would be reasonable to exercise personal jurisdiction over FAR.

        **d.**     **Conclusion**

For the reasons set forth above, the Court finds that Plaintiff has established a prima facie case that the Court's exercise of personal jurisdiction over FAR would not offend due process. Accordingly, the Court denies FAR's motion to dismiss on the basis of a lack of personal jurisdiction. As Plaintiff has not met its burden of establishing a prima facie case of personal jurisdiction as to Franks, however, the motion to dismiss is granted with respect to Franks.

**C.**     **Venue is Proper**

FAR also argues that the case should be dismissed because venue in this Court is improper pursuant to 28 U.S.C. § 1391(a), which states in pertinent part:

> (a)     A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in:
>
>     (1)     a judicial district where any defendant resides, if all defendants reside in the same State,
>
>     (2)     a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is subject of the action is situated, or
>
>     (3)     a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action otherwise may be brought.

FAR asserts that the only connections it has with the State of Michigan are the registration of some Michigan residents to FAR's services and that, because such services are irrelevant to the claims in

this action (*i.e.*, they are not "events or omissions giving rise to the claim"), venue is improper.

Although the articles allegedly were published in Arizona, the Court finds that the exercise of jurisdiction in this judicial district is proper. As discussed above, a substantial part of the events giving rise to the claim occurred in this judicial district. For example, the articles were published on the internet and were, therefore, published to persons in Michigan. The suggestions by FAR's agents and/or employees to persons that they seek full refunds from Plaintiff, which some persons did, also constitute events in Michigan that give rise to Plaintiff's claim. Those conclusions mean that venue is proper in this judicial district under § 1391 because a plaintiff may file his complaint in *any* forum where a substantial part of the giving rise to the claim arose. *See First of America Corp. v. Bramlet*, 141 F.3d 260, 263-64 (6th Cir. 1998) (holding that § 1391 does not require the forum to have the most substantial connection, only that it be a forum with a substantial connection to the plaintiff's claim). Thus, FAR's motion to dismiss based on 28 U.S.C. § 1391(a) is denied.

**D.     Motion to Transfer**

FAR alternatively requests that this Court transfer the case to the State of Arizona pursuant to 28 U.S.C. §1406(a), which provides:

> The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

28 U.S.C. § 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The moving party bears the burden of showing that a transfer is warranted, and must make this showing by a preponderance of the evidence. *Amphion, Inc. v. Buckeye Elec. Co.*, 285 F. Supp. 2d 943, 946 (E.D. Mich. 2003). The Court has broad discretion to grant or deny a motion to transfer. *Phelps v. McClellan*, 30 F.3d 658, 663 (6th Cir. 1994). When making this determination, the Court must weigh:

(1)     the parties' convenience;

(2)     the witnesses' convenience;

  (3)  relative ease of access to sources of proof;

  (4)  availability of process to compel attendance of unwilling witnesses;

  (5)  cost of obtaining willing witnesses;

  (6)  practical difficulties associated with trying the case quickly and inexpensively; and

  (7)  interests of justice.

*Thomas v. Home Depot, U.S.A., Inc.*, 131 F. Supp. 2d 934, 936 (E.D. Mich. 2001).

  *1. The parties' convenience*

Plaintiff resides in the Eastern District of Michigan, and FAR is incorporated in the State of Arizona. As such, each party would be greatly inconvenienced by this case being tried in the forum desired by the other party. Generally, however, a plaintiff's choice of forum is given substantial deference. *Sloan v. BorgWarner Diversified Transmission Prod.*, No. 06-10861, 2006 WL 1662634, *4 (E.D. Mich. 2006). Thus, as Plaintiff filed the action in the Eastern District of Michigan, this factor favors the case being tried here.

  *2. The witnesses' convenience*

The witnesses' convenience "is one of the most important factors in determining whether to grant a motion to change venue under § 1404(a)." *Thomas*, 131 F.Supp.2d at 937. FAR asserts that most of the witnesses in this case live in the western United States. For that reason, FAR believes it will be difficult to hail them into court in Michigan, it would be costly to do so and it is more practical to hold the case in Arizona for their benefit (and the defendants). Plaintiff asserts that the "vast majority of the witnesses and documents in this case are located in Michigan." The Court notes that neither party identified the names or residences of any witnesses other than the parties, but based on the allegations involved in the case, the Court concludes that it is likely that some witnesses reside in Arizona (where FAR is located), some witnesses reside in Michigan (where Plaintiff is located), and one party/witness lives in the Western District of Washington. As such, the Court does not find that the convenience of witnesses weighs in favor of this case being tried in Arizona or Michigan.

*3.     Relative ease of access to sources of proof*

FAR claims that "the sources of proof, namely the writings [involved], and documentation supporting his claims are all in the State of Arizona or on the Western side of the United States." The allegedly fraudulent works of art that have been sold could be anywhere in the world, however, and any works of art in possession of Plaintiff (and/or Plaintiff's documentation or authentication related to the art at issue) likely would be in the Eastern District of Michigan. Accordingly, the Court finds that this factor does not favor either party.

*4.     Availability of process to compel attendance of unwilling witnesses*

Neither party has identified any unwilling witnesses. A general possibility of unwilling witnesses does not favor a transfer. *See Thomas*, 131 F. Supp. 2d at 940. Thus, this factor does not favor either forum.

*5.     Cost of obtaining willing witnesses*

FAR argues that the cost will be "astronomical" for the witnesses to come to the Eastern District of Michigan for court proceedings and/or trial, as most of the witnesses reside in the western part of the United States. Assuming that is true, the cost of getting those witnesses residing in the Eastern District of Michigan to Arizona similarly would be "astronomical." Thus, the Court is not persuaded that this factor favors either forum.

*6.     Practical difficulties associated with trying the case quickly and inexpensively*

FAR argues that it is much more practical to hold the case in Arizona than in Michigan because of Arizona's closer proximity to witnesses and discovery documents, and because it would be easier for the defendants to mount a fair defense. Based on the information discussed above (generally, that Plaintiff has comparable issues, costs, etc. if the case is transferred to Arizona), however, the Court finds that this factor does not favor either forum.

*7.     Interests of justice*

FAR argues that all articles related to this case were published in the State of Arizona and all potentially discoverable information related to the statements at issue are "located in that state,

or elsewhere, but not in Michigan." FAR further asserts that the financial cost and time expended would be enormous for the defendants if this case is tried in Michigan, as FAR's defense would be hampered by long distance communications with its attorneys. FAR also suggests that FAR and Franks could face bankruptcy if the case is tried in Michigan. As noted above, however, much of the documentation related to the works owned and/or sold by Plaintiff which the defendants have asserted is fraudulent would be in the Eastern District of Michigan. Moreover, if the case is transferred to Arizona, Plaintiff will incur many, if not all of, the same financial costs and time expenditures which FAR mentions. Accordingly, the Court finds that this factor does not favor either forum.

        *8.*     *Conclusion*

Based on the totality of the circumstances, the Court finds that FAR and Franks have not met the burden of showing that a transfer to the U.S. District Court for Arizona is warranted. Accordingly, the motion to transfer case is denied.

### V.  CONCLUSION

Accordingly, and for the reasons set forth above, FAR's and Frank's Motion to Dismiss for Lack of Personal Jurisdiction and/or Improper Venue Pursuant to Fed. R. Civ. P. 12(b)(2) and (b)(3), or, In the Alternative, for Transfer of Venue Pursuant to 28 U.S.C. §1406 is DENIED as to FAR and GRANTED as to Franks.

      IT IS SO ORDERED.


                                            s/Lawrence P. Zatkoff
                                            LAWRENCE P. ZATKOFF
                                            UNITED STATES DISTRICT JUDGE

Dated:  March 19, 2009

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on March 19, 2009.

                                              s/Marie E. Verlinde
                                              Case Manager
                                              (810) 984-3290