UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PARK WEST GALLERIES, INC.,

       Plaintiff/Counter-Defendant

vs.

BRUCE HOCHMAN, THE SALVADOR DALI
GALLERY, INC. and THERESA FRANKS,

       Defendants,

and

GLOBAL FINE ART REGISTRY, LLC,

       Defendant/Counter-Plaintiff.

_____/

CASE NO. 08-12247
HON. LAWRENCE P. ZATKOFF

PARK WEST GALLERIES, INC.,

       Plaintiff/Counter-Defendant,

vs.

DAVID CHARLES PHILLIPS,

       Defendant/Counter-Plaintiff.

_____/

CASE NO. 08-12274
HON. LAWRENCE P. ZATKOFF

**OPINION AND ORDER**

AT A SESSION of said Court, held in the
United States Courthouse, in the City of Port Huron,
State of Michigan, on February 12, 2010

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

This matter is before the Court on Park West Galleries, Inc.'s ("Park West") Motion for
Summary Judgment as to the Counter-complaint filed by Counter-Plaintiffs Global Fine Art
Registry, LLC ("FAR") and David Charles Phillips ("Phillips") (Docket #167 in Case No. 08-12247
and Docket #135 in Case No. 08-12274). FAR and Phillips filed a response, and Park West filed

a reply. The Court finds that the facts and legal arguments pertinent to Park West's motion are adequately presented in the parties' papers, and the decision process will not be aided by oral arguments. Therefore, pursuant to E.D. Mich. Local R. 7.1(e)(2), it is hereby ORDERED that Park West's motion be resolved on the documents that have been filed in this matter, without this Court entertaining oral arguments. For the reasons that follow, Park West's Motion for Summary Judgment on the Counter-complaint filed by FAR and Phillips is GRANTED IN PART and DENIED IN PART.

## II. BACKGROUND

Park West filed Case No. 08-12247 against FAR, Theresa Franks ("Franks") and Bruce Hochman ("Hochman") on May 22, 2008, and that case was assigned to this Court. On May 27, 2008, Park West filed a similar action (Case No. 08-12274) arising out of essentially the same circumstances against Phillips. Case No. 08-12274 was reassigned to this Court pursuant to E.D. Mich. L.R. 83.11(b)(7), and the cases were consolidated.

Park West is a private art gallery that conducts business throughout the United States and, at least as it pertains to the sale of art on cruise ships, throughout the world. Phillips is a writer who specializes in visual arts. As it relates to this case, Phillips allegedly was hired as a contract writer by FAR, which operates a website dedicated to, in part, exposing fraudulent practices and unethical behavior in the art world. Prior to the date Park West filed its initial Complaint, Phillips had written at least six articles assailing Park West's business practices, including one "interview" with Hochman, a person who claims to be one of the country's most knowledgeable experts on authentic Salvador Dali works.[1] Park West alleges that at least some of the statements made in the Hochman interview and the other articles authored by Phillips, all of which were published on the FAR

---

[1]Park West alleges that Phillips has published at least an additional six articles about Park West's business practices on the FAR website since the filing of its Complaint, as well as participating in the publication by FAR of a 48 minute video regarding Park West's business practices.

website, were false and defamatory as to Park West.

In their Counter-Complaint, FAR and Phillips allege that Park West, through a number of its agents, employees and attorneys, made defamatory statements about FAR and/or Phillips (Count I). Many of the allegedly defamatory statements, identified and discussed by the Court in an Opinion and Order dated December 17, 2009 ("December 2009 Opinion"), which is hereby incorporated by reference, remain before the Court. FAR and Phillips also filed claims against Park West for: Tortious Interference (Count II), Interference with Prospective Business Advantage (Count III), Lanham Act violations (Count IV), and Conspiracy (Count V).

## III. LEGAL STANDARD

Summary judgment is appropriate only if the answers to the interrogatories, depositions, admissions, and pleadings, combined with any affidavits in support show that no genuine issue as to any material fact remains and that the moving party is entitled to a judgment as a matter of law. *See* FED. R. CIV. P. 56(c). A genuine issue of material fact exists when there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)(citations omitted). In application of this summary judgment standard, the Court must view all materials supplied, including all pleadings, in the light most favorable to the non-moving party. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

The moving party bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that establish the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial. *See* FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 324. The nonmoving party must do more than show that there is some metaphysical doubt as to

the material facts.  It must present significant probative evidence in support of its opposition to the motion for summary judgment in order to defeat the motion for summary judgment. *See Moore v. Phillip Morris Co.*, 8 F.3d 335, 339-40 (6th Cir. 1993).

## IV. ANALYSIS

### A.    Evidence of Damages

It is undisputed that FAR and Phillips must prove they have been damaged by the allegedly wrongful conduct of Park West with respect to each of their claims.  Park West contends that FAR and Phillips have offered no evidence of the damages they have incurred and, as such, the entire Counter-complaint should be dismissed.  Throughout discovery, FAR and Phillips directed inquiries regarding damages to their expert, David Shindel ("Shindel").  On October 14, 2009, approximately six weeks prior to the close of expert discovery (November 30, 2009), Shindel produced an expert report containing four paragraphs, wherein he concluded that FAR suffered "potential damages" of $1,100,000 and that Phillips "potentially incurred substantial damages."  Shindel did not offer a conclusive figure for either FAR or Phillips in that report.  At his deposition on November 30, 2009, Shindel offered no additional opinion regarding any damages FAR or Phillips had suffered and testified that he had not yet been asked to update his October 14, 2009, report.  Park West asserts that because Shindel had not specified what damages have been suffered by FAR and/or Phillips, the Counter-complaint should be dismissed.

FAR and Phillips argue that their damages resulting from Park West's alleged conduct include: (1) attorney fees; (2) public relations fees; (3) damage to reputation; and (4) damages pursuant to violation(s) of the Lanham Act.  FAR and Phillips further argue that (a) at the time of the deposition, Shindel had just received thousands of pages of documents from Park West and had not had the opportunity to review all of them; (b) much time had been devoted by Shindel to reviewing the same; (c) Park West wanted to continue Shindel's deposition beyond November 30, 2009; and (d) counsel for FAR and Phillips agreed to continue the deposition after Shindel had time

to review the documentation. FAR and Phillips contend that Shindel did not testify that they had suffered no damages but only that he was not prepared to make a conclusive determination as to the amount. Further, FAR and Phillips argue that Lanham Act violations are statutorily established ($100,000 per violation) and that attorney fees are recoverable under the Lanham Act. Finally, FAR and Phillips represent that Shindel is ready to give his final opinion on their damages, as evidenced by Shindel's supplemental expert report attached to their response to Park West's motion.

The Court finds FAR's and Phillips' argument that Park West failed to provide FAR and Phillips with discovery irrelevant to Shindel's determination of the damages suffered by FAR and Phillips; the information necessary to make such a determination was within the province and control of FAR and Phillips. Further, to the extent Shindel spent time reviewing the discovery provided by Park West, such efforts were related to countering Park West's expert's assessment of Park West's damages on its claims. In other words, such efforts had nothing to do with the computation of damages suffered by FAR and Phillips.

Nonetheless, the Court finds that dismissal of the Counter-claims filed by FAR and Phillips for failing to demonstrate any damages is not warranted. First, Shindel never said that there were no damages to FAR and/or Phillips. Rather, Shindel expressly stated an approximate figure for FAR and said that Phillips potentially had substantial damages. Second, upon reviewing the closing pages of the transcript for Shindel's deposition, the Court has confirmed FAR's and Phillips' representation that Park West's counsel requested (and Shindel and FAR/Phillips' counsel agreed) that Shindel's deposition be continued after Shindel formulated a final opinion as to damages. Third, a supplemental expert report prepared by Shindel was attached to the response brief on January 15, 2010, two months before trial. Therefore, Park West: (1) has had time to digest Shindel's report; (2) will still have adequate time to take the balance of Shindel's deposition well before trial; and (3) can prepare a rebuttal, if Park West so desires. As such, the Court finds that Park West will not be unfairly prejudiced as a result of the delayed expert report and deposition. Finally, the Lanham Act provides that a party may elect statutory damages, instead of actual

damages and profits, and possibly recover attorney fees, for a violation of the Lanham Act provision at issue in this case (15 U.S.C. § 1125(d)(1)). *See* 15 U.S.C. § 1117(a) (providing for attorney fees in exceptional cases) and 15 U.S.C. § 1117(d) (providing for an award of $1,000 to $100,000 for each violation, as the court determines just). No expert is necessary to testify about those damages.

For the foregoing reasons, the Court denies Park West's motion for summary judgment on the Counter-complaint for failure to provide evidence of damages. In furtherance of enabling Park West to complete its expert discovery of Shindel promptly, however, the Court hereby ORDERS that, by the close of business on February 17, 2010, Shindel and Park West's counsel shall agree on a date and time for the completion of Shindel's deposition, and such deposition shall take place on or before February 24, 2010. The Court further ORDERS that FAR and Phillips shall cause Shindel to be available for the completion of his deposition by Park West's counsel and, if Shindel is not produced in accordance with this Order, the Court may, and likely will, strike Shindel as a witness in this case.

**B.    Defamation Claims (Count I)**

*1.    Ewell, Beaman, Conner and Postel*

FAR and Phillips allege that each of Bernard Ewell ("Ewell"), Tom Beaman ("Beaman"), Jill Conner ("Conner") and Louis Postel ("Postel"), while acting on behalf of or at the behest of Park West, made defamatory statements regarding FAR. In addition, FAR and Phillips allege that Ewell and Postel made defamatory statements regarding Phillips while acting as agents of Park West. Their respective statements (as well as those related to the other defamation claims addressed below) were identified and discussed in the December 2009 Opinion. Park West does not challenge the content of any of these statements in its motion for summary judgment; instead, Park West contends that, as a matter of law, the statements of Ewell, Beaman, Conner and Postel cannot be attributed to Park West at all.

In order to prevail on a defamation claim, a plaintiff must prove:

1.    A false and defamatory statement concerning plaintiff;

2. An unprivileged publication to a third party;

3. Fault amounting to at least negligence on the part of the publisher; and

4. Either actionability per se or the existence of special harm.

*Rouch v. Enquirer & News (After Remand)*, 440 Mich. 238, 251 (1992). A plaintiff must specifically plead the defamatory statements on which the complaint is based. *Royal Palace Homes, Inc. v. Channel 7 of Detroit, Inc.*, 197 Mich.App. 84, 115-16 (1992).

Park West argues that FAR and Phillips have produced no evidence in support of at least one element of their defamation claims pertaining to the statements made by Ewell, Beaman, Conner and Postel, *i.e.*, that Park West published the alleged defamatory statements.[2] Park West argues that Ewell, Beaman, Conner and Postel were not acting on behalf of or at the behest of Park West when they made their statements and, as such, Park West is entitled to summary judgment on the defamation claims related to them. In support of that assertion, Park West has submitted the affidavit of Albert Scaglione ("Scaglione"), the CEO and founder of Park West. Scaglione states that none of Ewell, Beaman, Conner and Postel is, and none of them has ever been, an agent, principal or employee of Park West. Scaglione further states that Park West has never authorized, directed or ratified statements made by Ewell, Beaman, Conner or Postel. Park West argues that FAR and Phillips have no evidence to contradict the affidavit of Scaglione.

"A corporation may be held liable for slander uttered by an agent while in the discharge of his duty as agent and in relation to the matter about which his duty as agent permits or requires him to act, in the same way and to the same extent as an individual could be held liable for the same slander." *Grist v. The UpJohn Co.*, 368 Mich. 578, 583 (1962) (quoting *Poledna v. Bendix Aviation Corp.*, 360 Mich. 129, 139-40 (1960) (citation omitted)). "An agency relationship may arise when there is a manifestation by the principal that the agent may act on his account." *Merretta v. Peach*,

---

[2]The Court notes that it previously addressed a like argument with respect to these individuals, as well as a Wikipedia entry, in the December 2009 Opinion. At that time, the Court analyzed Park West's argument in the context of Fed.R.Civ.P. 12(b)(6) and held that the defamation claims attributed to statements made by these individuals (and the Wikipedia entry) were sufficiently pled to withstand a Rule 12(b)(6) motion to dismiss.

195 Mich.App. 695, 697-98 (1992). "The test of whether an agency has been created is whether the principal has a right to control the actions of the agent." *Little v. Howard Johnson Co.*, 183 Mich.Appp. 675 (1990). In Michigan, "where there is a disputed question of agency, any evidence, either direct or inferential, which tends to create an agency relationship creates a question of fact for the jury to decide." *Vargo v. Sauer*, 457 Mich. 49, 71 (1998) (citations omitted). As discussed below, the Court finds that FAR and Phillips have set forth evidence that creates a genuine issue of material fact as to whether Postel was acting on behalf of or at the behest of Park West with respect to the statements at issue made by him. The Court also concludes that there is no genuine issue of material fact as to whether Ewell, Conner and Beaman were acting on behalf of or at the behest of Park West when making the allegedly defamatory statements attributed to them.

As of July 16, 2008, Postel had a listing on the social networking website "www.linkedin.com." On that listing, Postel is identified as a "Consultant/Writer at Park West Gallery." As of June 4, 2009, Postel's listing stated that he had experience as "Public Relations/Blogger/Writer" for Park West Gallery from March 2008 to August 2008, about which he stated, "I [was] doing a lot of blogging about arts and culture as well as spearheading a variety of related projects: films, books, website creation. ..." Further, according to Park West's website, Postel was editing a book to be released by Park West to celebrate Park West's 40th anniversary. For these reasons, the Court concludes that there is a genuine issue of material fact as to whether Postel was subject to the control of Park West, and therefore an agent of Park West, at the time he posted the allegedly defamatory statements on his blog in July 2008.

Ewell testified at his deposition that: (1) he earned "just over $100,000" in income from Park West in 2008; (2) approximately 80% of his income was from Park West; (3) he has examined artwork for and given opinions of authenticity to Park West prior to Park West purchasing certain artworks; (4) he has traveled to Detroit to give talks during gallery openings for Park West and examined artworks there; and (5) he has spoken to Park West clients referred to him by Park West. An article written by Ewell was on the Park West website in 2009 (and, based on a representation

in the response brief filed by FAR and Phillips, was still on the Park West website as of January 2010), and Ewell has been paid by Park West for work on a book. Although the foregoing testimony is evidence that Ewell has been compensated by Park West, FAR and Phillips have produced no evidence that Ewell was subject to the control of Park West when posting the allegedly defamatory statements on his blog. FAR and Phillips also have failed to produce any evidence that Park West authorized or ratified any of Ewell's allegedly defamatory statements. Accordingly, the Court concludes that there is no genuine issue of material fact as to whether Ewell was acting as an agent of Park West such that Park West could be liable for the allegedly defamatory statements made by Ewell.

Each of Conner and Beaman authored an article critical of FAR that was published on the internet in July 2008. Based on an email dated April 16, 2008 (approximately 3 months before the articles by Conner and Beaman were published), the same articles were attached to an email from Eli Zaret ("Zaret"), a Park West agent, to a third party (Mike Holfeld). Zaret's April 16, 2008, email stated that the "articles are articles currently being written by respected journalists that expose the Fine Art Registry, Hochman and Hunter for their stunning lack of credibility. The articles are going to be published in Manhattan Arts International and artfagcity.com." Contrary to the assertions of FAR and Phillips, however, the fact that the articles being written by Conner and Beaman were in the hands of a Park West agent while "currently being written" and months before they were published is not evidence that Park West had any involvement in the creation, substance or opinions set forth in those articles. There also is no evidence that Conner or Beaman was compensated by Park West or that Park West had any control over Conner or Beaman. Finally, FAR and Phillips also have failed to produce any evidence that Park West authorized or ratified any of Conner's or Beaman's allegedly defamatory statements. Accordingly, the Court concludes that there is no genuine issue of material fact as to whether Conner and Beaman were acting as agents of Park West for purposes of writing their articles.

Accordingly, for the reasons set forth above, Park West's motion for summary judgment is

granted with respect to the claims of defamation involving Ewell, Conner and Beaman but denied with respect to the claims of defamation involving Postel.

### 2. *Wikipedia*

Park West next asserts that FAR and Phillips have produced no evidence that Park West published defamatory statements on the Wikipedia website. Scaglione's affidavit states that neither Park West, nor any of its agents, principals or employees, published statements about FAR and Phillips on the Wikipedia website. FAR and Phillips state: (a) Park West's agents have been admonished in the past for making false and unsubstantiated changes to Wikipedia entries, and (b) nine edits to Wikipedia articles have been made from inside the Park West building. Thus, FAR and Phillips assert that they "have a firm basis for believing that Park West, through its agents or principals were the authors of the offending Wikipedia entry." The Court concludes, however, that neither such past conduct (even if it did occur) nor "a firm basis for believing" that Park West authored such allegedly offending entry does not constitute evidence that permits one to find that there is a genuine issue of material fact that Park West was in fact the author of the allegedly defamatory Wikipedia entry. Accordingly, the Court grants Park West's motion for summary judgment with respect to the allegedly defamatory Wikipedia entry.

### 3. *Other Statements that Survived Park West's Rule 12(b)(6) Motion*

The Court ruled that the following allegedly defamatory statements were not subject to dismissal pursuant to Park West's Rule 12(b)(6) motion: (a) a statement made by Jaye Quadrozzi, an attorney for Park West, to another attorney; (b) a press release attached as Exhibit W to the Counter-complaint (a "PR Newswire" article dated January 28, 2009); and (c) two statements made by agents of Park West to Guz Zucco, a client of FAR. Park West did not address any of those statements in its motion for summary judgment and, despite FAR and Phillips noting the absence of any argument regarding such statements, did not mention any of these statements in its reply. Accordingly, the Court concludes that summary judgment is not warranted with respect to claims arising out of the allegedly defamatory statements identified in this Section IV.B.3.

### 4. Conclusion

For the reasons set forth above, the Court grants in part and denies in part Park West's motion for summary judgment with respect to Count I of the Counter-complaint.

## C. Counts II, III and V

As in its Rule 12(b)(6) motion, Park West contends that it is entitled to dismissal of the causes of action filed by FAR and Phillips for Tortious Interference (Count II), Interference with Prospective Business Advantage (Count III) and Conspiracy (Count V). Park West's sole basis for dismissal (aside from the absence of damages argument addressed in Section IV.A., *supra*) is premised on the assumption that FAR's and Phillips' defamation claims would be dismissed. If, in fact, all defamation claims had been dismissed, Counts II, III and V necessarily would fail because each is dependent upon the existence of an underlying tort. As the Court has concluded that there are a number of allegedly defamatory statements upon which FAR and Phillips may continue their action, however, the Court denies Park West's motion for summary judgment insofar as it seeks to dismiss Counts II, III and V.

## D. Count IV

The following sentences constitute Park West's sole reference to FAR's Lanham Act claim (Count IV) in Park West's motion for summary judgment: "FAR's counterclaim also asserts that Park West violated the Lanham Act, 15 U.S.C. 1125(d). Specifically, FAR alleges that it has been 'severe[ly] harm[ed]' by Park West's misuse of FAR's registered marks." Despite the fact that the response brief of FAR and Phillips accurately noted that Park West's motion for summary judgment failed to address the Lanham Act claim, Park West has yet to argue that the Lanham Act claim should be dismissed (except for its absence of damages argument rejected by the Court in Section IV.A., *supra*). Accordingly, the Court denies Park West's motion for summary judgment insofar as it pertains to FAR's Lanham Act claim (Count IV).

## V.  CONCLUSION

Accordingly, for the reasons and as discussed above, Park West's Motion for Summary Judgment as to the Counter-complaint filed by FAR and Phillips is GRANTED IN PART and DENIED IN PART with respect to Count I and DENIED as to Counts II-V.  In addition, IT IS HEREBY ORDERED that the continuation and completion of Shindel's deposition be conducted on or before February 24, 2010, in accord with the Court's directives set forth in Section IV.A. above.

IT IS SO ORDERED.

S/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated:  February 12, 2010

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on February 12, 2010.

S/Marie E. Verlinde
Case Manager
(810) 984-3290