UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PARK WEST GALLERIES, INC.,

      Plaintiff,

                                         Case No. 08-12247

v.

                                         Hon. Lawrence P. Zatkoff

GLOBAL FINE ART REGISTRY, LLC,
THERESA FRANKS, THE SALVADOR
DALI GALLERY and BRUCE HOCHMAN,

      Defendants.

_____/

PARK WEST GALLERIES, INC.,

      Plaintiff,                              Case No. 08-12274

v.                                              Hon. Lawrence P. Zatkoff

DAVID CHARLES PHILLIPS,

      Defendant.

_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the
United States Courthouse, in the City of Port Huron,
State of Michigan, on February 26, 2010

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

Presently before the Court are four substantive motions:

    A.    Motion for Summary Judgment filed by Global Fine Art Registry, LLC
          ("FAR") (Docket #168 in Case No. 08-12247 and Docket #136 in Case No.
          08-12274).

      B.      Motion for Summary Judgment filed by David Charles Phillips ("Phillips") (Docket #169 in Case No. 08-12247 and Docket #137 in Case No. 08-12274).

      C.      Motion for Summary Judgment filed by Theresa Franks ("Franks") (Docket #170 in Case No. 08-12247 and Docket #138 in Case No. 08-12274).

      D.      Motion for Summary Judgment filed by Bruce Hochman ("Hochman") and The Salvador Dali Gallery (the "Dali Gallery") (Docket #171 in Case No. 08-12247 and Docket #139 in Case No. 08-12274).

The parties have fully briefed all four Motions.[1]  The Court finds that the facts and legal arguments pertinent to each of the four Motions are adequately presented in the parties' papers, and the decision process will not be aided by oral arguments.  Therefore, pursuant to E.D. Mich. Local R. 7.1(e)(2), it is hereby ORDERED that the Motions be resolved on the briefs submitted, without this Court entertaining oral arguments.  For the reasons that follow, the Court GRANTS IN PART and DENIES IN PART the Motions for Summary Judgment filed by FAR, Phillips and Franks (hereinafter, the "FAR Defendants") and GRANTS IN PART and DENIES IN PART the Motion for Summary Judgment filed by Hochman and the Dali Gallery.


## II. BACKGROUND

FAR is an Arizona-based LLC that operates a website that sells to artists and art owners a tagging system that allows them to protect their works against acts of fraud.  FAR also provides regular commentary and reporting on issues of interest to the art world.  Approximately two years

---

[1]Hochman and the Dali Gallery filed an *ex parte* motion for leave to file excess pages with respect to their Motion for Summary Judgment (*See* Docket #165 in Case No. 08-12247 and Docket #133 in Case No. 08-12274), as well as an *ex parte* motion for leave to file excess pages with respect to their reply brief  (*See* Docket #183 in Case No. 08-12247 and Docket #150 in Case No. 08-12274) .  Plaintiff Park West Gallery, Inc. ("Park West") filed *ex parte* motions for leave to file excess pages in its response to each Motion for Summary Judgment (*See* Docket #s 174, 176, 178 and 180 in Case No. 08-12247 and Docket #s 142, 144, 146 and 148 in Case No. 08-12274).   In the interests of justice, the Court GRANTS each of Park West's four *ex parte* motions for leave to file excess pages and GRANTS both *ex parte* motions for leave to file excess pages filed by Hochman and the Dali Gallery.

ago, FAR learned that some of the customers of Park West who bought artwork from Park West on cruise ships had made claims of fraudulent and unethical dealings by Park West.  FAR subsequently published several articles and case studies discussing individual complainants and related controversies.

As a result of the articles published on the FAR website, Park West filed suit against FAR (then identified as Fine Art Registry, LLC), Franks (FAR's Chief Executive Officer), and Hochman in Oakland County Circuit Court on April 11, 2008, for: (1) defamation; (2) tortious interference; (3) interference with prospective business advantage; and (4) civil conspiracy.  Defendants removed the Oakland County case to federal court (Case No. 08-12247), and Case No. 08-12247 later was consolidated with Case No. 08-12274, a related case that Park West filed against Phillips, a FAR contract writer.  Upon being granted leave by the Court, Park West filed an Amended Complaint in Case No. 08-12247 on August 7, 2009, which: (1) changed the caption to reflect the correct corporate name for FAR (Global Fine Art Registry, L.L.C. rather than "Fine Art Registry"); (2) reinstated Franks as a party defendant; and (3) added The Salvador Dali Gallery (the "Dali Gallery") as a defendant.

### III.  LEGAL STANDARD

**A.     Rule 12(b)(6)**

A motion brought pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted tests the legal sufficiency of the plaintiff's complaint.  The Court must accept as true all factual allegations in the complaint, and any ambiguities must be resolved in the plaintiff's favor. *Jackson v. Richards Medical Co.*, 961 F.2d 575, 577 (6th Cir. 1992).  A district court's grant

3

of a motion to dismiss is proper when there is no set of facts that would allow the plaintiff to recover. *Carter by Carter v. Cornwall*, 983 F.2d 52, 54 (6th Cir. 1993).

**B.     Rule 56**

Summary judgment is appropriate only if the answers to the interrogatories, depositions, admissions, and pleadings, combined with any affidavits in support show that no genuine issue as to any material fact remains and that the moving party is entitled to a judgment as a matter of law. *See* FED. R. CIV. P. 56(c). A genuine issue of material fact exists when there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)(citations omitted). In application of this summary judgment standard, the Court must view all materials supplied, including all pleadings, in the light most favorable to the non-moving party. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

The moving party bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that establish the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial. *See* FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 324. The nonmoving party must do more than show that there is some metaphysical doubt as to the material facts. It must present significant probative evidence in support of its opposition to the motion for summary judgment in order to defeat the motion for summary judgment. *See Moore v. Phillip Morris Co.*, 8 F.3d 335, 339-40 (6th Cir. 1993).

4

## IV. ANALYSIS

**A.    Defamation Claims**

In order to prevail on a defamation claim, a plaintiff must prove:

1.    A false and defamatory statement concerning plaintiff;

2.    An unprivileged publication to a third party;

3.    Fault amounting to at least negligence on the part of the publisher; and

4.    Either actionability per se or the existence of special harm.

*Rouch v. Enquirer & News (After Remand)*, 440 Mich. 238, 251 (1992).  "These elements must be specifically pleaded, including the allegations with respect to the defamatory words, the connection between the plaintiff and the defamatory words, and the publication of the alleged defamatory words." *Gonyea v. Motor Parts Fed. Credit Union*, 192 Mich.App. 74, 77 (1991).  A plaintiff must specifically plead the defamatory statements on which the complaint is based. *Royal Palace Homes, Inc. v. Channel 7 of Detroit, Inc.*, 197 Mich.App. 84, 115-16 (1992).

*1.    Allegations of Verbal Statements Not Sufficiently Pled*

FAR and Phillips argue that Park West has insufficiently pled a claim for defamation with respect to allegedly defamatory verbal statements made by FAR and Phillips.  More specifically, FAR and Phillips argue that Park West fails to state what the allegedly defamatory verbal statements actually were.

In the Amended Complaint in Case No. 08-12247,  Park West states: "FAR has continued to publish verbal and written statements through the FAR website, and elsewhere, falsely accusing Park West of, *inter alia*, defrauding its customers and selling fake art by artists including Salvador Dali,..."  Similarly, in the Complaint in Case No. 08-12274, Park West states: "Defendant Phillips has continued to publish verbal and written statements through the FAR website, and elsewhere,

falsely accusing Park West of, *inter alia*, defrauding its customers and selling fake art by artists including Salvador Dali,..." Park West does not, however, identify any specific allegedly defamatory verbal statements by FAR or Phillips in the Amended Complaint (Case No. 08-12247) or the Complaint (Case No. 08-12274), respectively. As Park West has not specifically pled any verbal statements on which Park West bases its defamation claims against FAR and Phillips, the Court holds that Park West may not pursue damages for, and shall not seek to introduce evidence of, allegedly verbal defamatory statements.

       2.    *Franks*

Franks asserts that Park West's defamation claims against her should be dismissed as barred by the applicable statute of limitations. Park West filed its action against FAR, Franks and Hochman in Oakland County Circuit Court (the action was removed to this Court as Case No. 08-12247) on April 11, 2008. In the initial Complaint, all alleged actions of Franks were in her capacity as an officer (the Chief Executive Officer) of FAR. On March 19, 2009, the Court dismissed Franks because, based on the pleadings, Franks was not subject to personal jurisdiction in the Eastern District of Michigan. On June 17, 2009, Park West filed a motion to amend the Complaint that requested, among other things, that Franks be reinstated as a defendant in Case No. 08-12247 in her individual capacity. The Court entered an order on August 3, 2009, that allowed Park West to reinstate Franks as a party, and Park West filed the Amended Complaint in Case No. 08-12247 on August 7, 2009.

In the initial Complaint, Park West alleged that Franks was responsible for certain articles posted by FAR on the FAR website (Complaint, ¶¶ 24, 26, 27, 28, 29, 30, 31, 32), but Park West made no allegations therein that Franks had published any statements defaming Park West by

making posts to a forum on the FAR website (under the screen name "farandaway"). When it filed

the Amended Complaint, Park West set forth numerous statements posted by Franks (under the

screen name "farandaway") to a forum on the FAR website between August 30, 2007, and January

31, 2008, each of which posts allegedly defamed Park West.

Franks contends that the defamation claims against her in the Amended Complaint are barred

by the applicable one-year statute of limitations. *See* M.C.L. §§ 600.5805(1) and (9), which provide:

> (1)    A person shall not bring or maintain an action to recover
> damages for injuries to persons or property unless, after the claim
> first accrued to the plaintiff or to someone through whom the plaintiff
> claims, the action is commenced within the periods of time prescribed
> by this section.

> * * * * *

> (9)    The period of limitations is 1 year for an action charging libel
> or slander.

*See also Mitan v. Campbell*, 474 Mich. 21, 24-25 (2005). It is undisputed that the first time Park

West filed any allegation that Franks defamed Park West by way of the forum posts in this case was

on August 7, 2009,[2] when it filed its Amended Complaint in Case No. 08-12247.

Park West asserts that the claims against Franks are not barred by M.C.L. §§ 600.5805(1)

and (9) because the cause of action against Franks was fraudulently concealed, thus bringing its

claims against Franks within the two-year statute of limitations period under M.C.L. § 600.5855.

> If a person who is or may be liable for any claim fraudulently conceals the existence
> of the claim or the identity of any person who is liable for the claim from the
> knowledge of the person entitled to sue on the claim, the action may be commenced

---

[2]The Court notes that Park West's Motion to Amend the Complaint, with the proposed Amended Complaint
attached as an exhibit, was filed on June 17, 2009. The approximately three-month differential between the filing of
the Motion to Amend and the filing of the Amended Complaint is not relevant because the most recent allegedly
defamatory post by Franks was made on January 31, 2008, almost one-and-a-half years earlier, beyond the one-year
statute of limitations.

at any time within 2 years after the person who is entitled to bring the action discovers, or should have discovered, the existence of the claim or the identity of the person who is liable for the claim, although the action would otherwise be barred by the period of limitations.

Park West argues that Franks engaged in "actions which hinder a plaintiff from discovering the existence of a claim." Park West argues that Franks did so by choosing not to identify herself when she made the posts, as Phillips and one of her expert witnesses did. Thus, Park West argues that, although it knew that it had been defamed, it did not know the identity of the person against whom a claim could be made. Park West further argues that because Franks took affirmative steps to hide her identity when publishing the alleged defamatory statements, she cannot rely on the one-year statute of limitations to bar the claims against her.

The Court concludes that Park West is entitled to rely on the two-year statute of limitations period under M.C.L. § 600.5855. Franks did not identify herself when posting the alleged defamatory statements under the screen name "farandaway." Instead, she took the affirmative act of hiding her identity even though others associated with FAR (*e.g.*, Phillips and Frank Hunter, one of Franks' expert witnesses) clearly identified themselves on the forum post. As Franks concealed her identity, there was no way that Park West could have known the author of the "farandaway" posts when filing the initial Complaint in Case No. 08-12247. Rather, Park West could not have made such a determination until it had a chance to conduct discovery. Accordingly, the Court concludes that Park West's claims against Franks are: (1) governed by the two-year statute of limitations period under M.C.L. § 600.5855, and (2) not barred by the one-year statute of limitations pursuant to M.C.L. §§ 600.5805(1) and (9). Accordingly, Franks' motion for summary judgment on the defamation claims against her is denied insofar as it is based on the one-year statute of limitations under M.C.L. §§ 600.5805(1) and (9).

3.    *The Dali Gallery*

The Dali Gallery asserts that Park West has not specifically pled any words or statements made by the Dali Gallery that were false and defamatory. After stating that the Amended Complaint "clearly identifies the specific false and defamatory statements that were made by Hochman," Park West states that "[t]he same level of specificity is contained in Park West's defamation claim against the [Dali] Gallery." According to Park West, the paragraphs of the Amended Complaint that contain allegations of defamation by the Dali Gallery are:

> 46.    The Gallery has, on numerous occasions, made or repeated false and defamatory statements about Park West to customers or potential customers of Park West.
>
> 47.    The Gallery, through its agent Hochman, has told numerous Park West customers face-to-face, over the phone, and/or in writing that the artwork purchased from Park West is fake or not as purportedly represented by Park West. In most instances, the Gallery (through Hochman) did this without the actual artwork in question.
>
> 48.    The Gallery has also republished the false and defamatory statements made by FAR by including articles or links to articles published by FAR and defaming Park West in its newsletter, "The Salvador Dali Collectors Quarterly."

The Court finds that such allegations fail to specifically plead any statements made by the Dali Gallery and no false and defamatory words or statements are identifiable. All three allegations contain general averments of defamatory activity by the Dali Gallery and, unlike the statements attributed to Hochman, Park West does not identify what the false and defamatory statements were. Accordingly, the Court concludes that Park West's defamation claim against the Dali Gallery does not state a claim upon which relief can be granted. In addition, as the remaining claims (Counts II-V) asserted by Park West against the Dali Gallery are not viable because they derive from the

defamation claim (and no other underlying tortious act is alleged),[3] the Court hereby grants the Dali Gallery's motion for summary judgment *in toto*.

    *4.    Hochman*

    Hochman asserts a number of reasons why the defamation claims against him should be dismissed. The first reason is a general argument that defamatory statements not specifically pled are subject to dismissal. In reviewing the Amended Complaint, the Court notes that Park West has identified and specifically set forth seven false and defamatory statements allegedly made by Hochman. The Court also notes that Park West has alleged an unprivileged publication to a third-party, fault amounting to at least negligence on the part of Hochman and damage to Park West. Accordingly, the Court finds that Park West has sufficiently pled a defamation cause of action against Hochman and denies Hochman's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6).

    Hochman next argues that the alleged defamatory statements set forth in Paragraph 38 are not actionable because they are opinions that are protected. A statement of opinion is not actionable. *See Gertz v. Robert Welch, Inc.*, 118 U.S. 323, 339 (1974), wherein the Supreme Court stated:

> Under the First Amendment, there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas. But there is no constitutional value in false statements of fact.

*See also Orr v. Argus-Press Co.*, 586 F.2d 1008, 1114 (6th Cir. 1978) (applying Michigan defamation law). Hochman states that "[i]f the facts from which a defendant forms his or her opinion are given or are readily available and those facts cannot be proved false, the defendant is

---

[3]*See Holloway Sportswear,Inc. v. Transportation Ins. Co.*, 58 Fed.Appx. 172, 175 (6th Cir. 2003) (as to Count II); *Valassis Commun., Inc. v. Aetna Cas. & Sur. Co.*, 97 F.3d 870, 875-76 (6th Cir. 1996) (as to Count III); *Saha v. Ohio State University*, 259 Fed.Appx. 778, 780 (6th Cir. 2008) (as to Count IV); and *Nehls v. Hillsdale* College, 65 Fed.Appx. 984, 992 (6th Cir. 2003) (as to Count V).

not subject to liability for the opinion." *Citing on Agora, Inc. v. Axxess, Inc.*, 90 F.Supp.2d 697, 701 (D.Md. 2000).

Hochman argues that his statements consist of essentially two observations: (a) Dali prints sold by Park West were over-priced, and (b) Park West sells fake Dali prints. Hochman further argues that because "FAR, newspaper articles, and other web sites have all disclosed the facts upon which Mr. Hochman's opinions are based[,]" his statements are not actionable.

The Court finds Hochman's argument misplaced with respect to most of the alleged defamatory statements attributed to him. Although Hochman may have garnered information from "FAR, newspaper articles, and other web sites," that does not mean that any of that information is true or a "fact." Such information may be false or it may constitute an opinion itself. Moreover, the following statements of Hochman are not opinion: (1) "We're seeing things, that are not listed in the official catalog of the graphic work of Dali by Albert Field, listed and sold as 'authentic' according to Park West. We know they're not"; (2) Park West is "selling fake art"; (3) "Park West is the bandit"; (4) "these works are false ... the signatures [are] all the same ... they're done with an auto pencil device"; and (5) "Park West is applying some sort of Dali signature to the works to enhance their value, to make them look like they're something special or different." Therefore, the Court concludes that the statements set forth in parts (1) - (5) of this paragraph are not subject to dismissal as mere opinions. The Court agrees that the following statements made by Hochman constitute opinions: (a) "Park West and its people have no conscience"; and (b) "So yes, I do put a lot of blame on Park West. I think their actions are horrible." Accordingly, the Court holds that Park West shall not pursue any claim of defamation with respect to the statements identified in parts (a) and (b).

Hochman next observes the well-established and undisputed principle that truth is an absolute defense to a defamation action. Hochman argues that Park West has not met its burden of proving that Hochman's statements are false. Hochman also argues that the evidence supports his statements. Hochman states: (1) "all sources agree that Dali fakes have flooded the market for years," (2) experts for the defense support him, (3) Park West's handwriting experts have not authenticated the signatures, (4) Park West's expert, Bernard Ewell, states that this is all opinion and the artist is the only authenticator of the works, (5) Dali signed an affidavit denouncing the claims of certain Dali collectors, and (6) a defense expert believes the signatures are fake.

In response, Park West identifies 15 different reasons why "[n]ot only is the evidence clear that Hochman's statements are false, it is also clear that Hochman made them knowing they were false" (*e.g.*, Hochman purchased Divine Comedy prints from the same art dealer that Park West purchased some of its Divine Comedy prints; Park West purchased its Dali works only from the publishers of such works or individuals who could provide a provenance to individuals with a proven relationship with Dali himself; and Park West did not acquire any Dali artworks unless the art and documentation were reviewed and analyzed by experts). The countervailing assertions, each supported by admissible evidence, demonstrate that there is a genuine issue of material fact for the jury to decide. Accordingly, the Court denies Hochman's motion for summary judgment on the defamation claims insofar as it would require the Court to conclude as a matter of law that the alleged defamatory statements are true.

Finally, Hochman argues that his statements fall within the qualified privilege rule described in *Nuyen v. Slater*, 372 Mich. 654, 659 (1964). The elements of a qualified privilege are: (1) good faith, (2) an interest to be upheld, (3) a statement limited in its scope to the interest to be upheld, (4)

12

a proper occasion, and (5) publication in a proper manner and to proper parties only. *Id.*  A publication is conditionally or qualifiedly privileged where circumstances exist, or are reasonably believed by the defendant to exist, which cast on him the duty of making a communication to another person in the performance of a duty, or where the person is so situated that, in the interests of society, he should tell third persons certain facts in good faith. *Id.*

The *Nuyen* case involved an individual sending a letter to the State health department.  The *Nuyen* court stated: "As a private citizen interested in the proper administration of the local county health department, defendant was qualifiedly privileged to express her concern regarding the alleged improper conduct of an employee . . ." *Id*. at 659-60.  Hochman argues that, "given the extensive market pertaining to fake Dali paintings and signatures[,] Hochman was providing his opinion in regard to a shared interest with the general public and, in particular, people purchasing art pieces." Hochman further argues that as an appraiser, he has a duty "to my client, and . . . a third party duty to the community to do it right and to be honest" (quoting Park West's expert, Bernard Ewell).

The Court finds that Hochman's actions are distinguishable from the defendant's actions in *Nuyen*.  Whereas the *Nuyen* defendant sent a letter only to the public agency that employed the person allegedly engaged in misconduct, Hochman, in essence, published the alleged defamatory statements to the world, via the internet.  As such, the Court cannot conclude that the publication was made "in a proper manner and to proper parties only."  Accordingly, the Court concludes that Hochman is not entitled to a qualified privilege in this matter.

5.    *Park West is Not a Public Figure*

In their initial briefs, the FAR Defendants presume that Park West is a public figure, stating: "Park West Galleries, Inc. is a public figure" and "[t]hat Park West is a public figure or entity is not

13

reasonably in dispute." Thus, none of the FAR Defendants briefed the issue of whether Park West is a public figure. Hochman addressed and fully briefed the issue in both his brief in support of motion for summary judgment and his reply brief. In each instance, Hochman first argued that Park West is a general purpose public figure, but Hochman also argued that if Park West is not a general purpose public figure, Park West is a limited purpose public figure. Park West counters that it is not a public figure of any type. In their consolidated reply brief, the FAR Defendants address the issue of whether Park West is a limited purpose public figure (though their consolidated reply brief essentially replicates the language used by Hochman in his brief in support of motion for summary judgment).[4]

The issue of whether Park West is a public figure is a question of law. *Cobb v. Time, Inc.*, 278 F.3d 629, 637 (6th Cir. 2002) ("The unique nature of the interest protected by the actual malice standard requires that reviewing courts conduct an independent review to determine whether that standard has been met."). A court analyzing whether a given plaintiff is a public figure must look at the facts, taken as a whole, through the eyes of a reasonable person. *Waldbaum v. Fairchild Publ., Inc.*, 627 F.2d 1287, 1293 (D.C. Cir. 1980). There are a number of different ways a person or entity might be a public figure. In this case, Hochman asserts that Park West is both a general purpose public figure and a limited purpose public figure. "Those who, by reason of the notoriety of their achievements [general purpose] or the vigor and success with which they seek the public's attention [limited purpose], are properly classed as public figures." *Gertz*, 418 U.S. at 342.

---

[4] Whether Park West is a public figure is relevant to Park West's burden of proof with respect to the level of fault of the publisher of an alleged defamatory statement. If Park West is a public figure, Park West must prove that the publisher acted with actual malice when publishing a false and defamatory statement. If Park West is not a public figure, Park West need only prove that the publisher acted negligently when making a false and defamatory statement.

The Court first examines whether Park West is a general purpose public figure. A corporation attains public figure status "by voluntarily assuming a role of special prominence in the affairs of society." *Lakeshore Hosp. v. Perry*, 212 Mich.App. 396, 403 (1995). In *Lakeshore Hospital*, the Michigan Court of Appeals held that Lakeshore Community Hospital was a public figure because it had a role of "special prominence" in the community. In *Amway Corp. v. P&G*, 2001 U.S. Dist. LEXIS 1455, at *11 (W.D. Mich. Sept. 14, 2001), the court held Amway to be a public figure because Amway: (1) was large, (2) sold products internationally, (3) was well known, (4) advertised extensively, and (5) was involved in a public controversy related to the subject of the alleged defamatory statements before the alleged defamatory statements were made by the defendant.

The Court concludes that Park West does not fall within the realm of special prominence that Lakeshore Community Hospital or Amway do. Although Park West has advertised for years, sells products internationally, and is, according to its website, the largest dealer of fine art in the world, no evidence has been presented to the Court that Park West had achieved an elevated level of notoriety or a role of special prominence in the community when the alleged defamatory statements were made. No specifics were presented regarding the nature or time regarding charitable events Hochman and the FAR Defendants allege Park West held to foster goodwill for itself. The primary "event" cited by Hochman and the FAR Defendants as indicative of Park West's role in the community (a Park West Gallery Day held in Southfield) was not held until June 2009. By that time, this case was more than a year old. Accordingly, the Court concludes that Park West is not a general purpose public figure and turns its analysis to determining whether Park West is a limited purpose public figure.

Determining whether a plaintiff is a limited purpose public figure involves a two-stage analysis. *Clark v. ABC, Inc.*, 684 F.2d 1208, 1218 (6th Cir.1982) (citing *Gertz*, 418 U.S. at 345, 352). First, a "public controversy" must exist. Second, the nature and extent of the individual's involvement in the controversy must be ascertained. *Clark*, 684 F.2d at 1218. In *Gertz*, the Supreme Court held that persons who "have thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved" can be limited purpose public figures. *Id.* at 345, 351. A plaintiff who (a) voluntarily engages in the controversy, (b) has access to channels of effective communication to counteract false statements, and (c) has a prominent role in the public controversy is a limited purpose public figure. *Clark*, 684 F.2d at 1218 (citing *Gertz*, 418 U.S. at 345, 352).

### a.    Public Controversy

A matter of public concern is "a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public at the time of publication." *City of San Diego, Cal. v. Roe*, 543 U.S. 77, 83-84 (2004). A "public controversy" is "a real dispute, the outcome of which affects the general public or some segment of it in an appreciable way." *Waldbaum v. Fairchild Pub., Inc.*, 627 F.2d 1287, 1296 (D.C.Cir.1980). *See also Lundell Mfg. Co., Inc. v. ABC, Inc.*, 98 F.3d 351, 363 (8th Cir.1996).

Hochman argues that there is a longstanding public controversy over the legitimacy of sources of the purported Salvador Dali signatures, including the sources of some of the Dali prints Park West sold. In support of that statement, Hochman attached a number of published articles to his brief in support of motion for summary judgment. The articles, which are dated as early as 1988 and continue through the present, reflect that there has been a controversy related to the authenticity

16

of Salvador Dali prints since at least the late 1980s. Hochman also attached copies of several pages

of a book published in 1992. The book, authored by Lee Catterall, is entitled "The Great Dali Art

Fraud and Other Deceptions." Another "article" attached to Hochman's brief (it is actually a press

release from "Caponigro Public Relations Inc. . . . for Park West Gallery"), includes the following

paragraphs:

> SOUTHFIELD, Mich., May 9[, 2008]/PRNewswire/ – Author and
> journalist Lee Catterall and Michigan-based art dealers, Park West
> Gallery, have announced the publication of a new book which will
> update the continuing story of the murky underworld of counterfeit
> art attributed to the Spanish artist Salvador Dali.
>
> Park West CEO Albert Scaglione has been diligently working
> to clean up the Dali print market since the 1970s, and has maintained
> relationships with some of the most important dealers, experts and
> estates of authentic Dali artworks.

Some of the articles discuss the debatable authenticity of Dali works in the "Albaretto collections,"

one of the sources of the Dali works sold by Park West. Other articles discuss the cruise ship art

auction business and issues of inflated prices and misrepresentations regarding art sold on such

ships.[5]

Based on the foregoing, the Court finds that there is, and has been for years, a controversy

regarding the authenticity of Dali prints and that Park West has been aware of this controversy for

many years. Further, the Court finds that such controversy is "a real dispute, the outcome of which

affects . . . some segment of [the general public] in an appreciable way." *Waldbaum*, 627 F.2d at

1296. Accordingly, the Court concludes that there is (and was at the time the events alleged in Park

West's initial Complaint in Case No. 08-12247 occurred) a public controversy over the authenticity

---

[5]The Court notes that this case is not about cruise ship auctions; it is about Dali artwork sold by Park West.

of some Dali works (and/or Dali signatures), including some works that come from the Albaretto collection, one of the sources of Dali works sold by Park West.

### b.    Nature and Extent of Park West's Involvement

Hochman and the FAR Defendants argue that Park West has easy access to the media and has used that access to vigorously and publicly inject itself into the controversy and influence the outcome over many years.  They argue:

> Park West promotes itself to the public as the "largest art gallery in the world," has numerous blogs and web sites, has had numerous articles written about it, engages in commerce with the public and employs at least very expensive public relations companies.  Further, Park West is at the forefront of controversy regarding the sale of Dali prints with fraudulent signatures to the public, and other fraudulent and/or worthless artwork which has caused it to be a Defendant in six purported class action lawsuits by art buyers, another lawsuit for the sale of fraudulent artwork by other art buyers, and pending federal criminal investigations.

In support of the foregoing, Hochman and the FAR Defendants specifically identify the following actions by Park West and/or its representatives:

1.    An article titled "Park West Gallery Sets the Record Straight," authored by Park West's Gallery Director Morris Shapiro, published in the May 2009 issue of *The Artist's Magazine*.

2.    An interview with Albert Scaglione ("Scaglione"), CEO of Park West, that appeared in *Crain's Detroit Business* in December 2009.

3.    Multiple media appearances by Scaglione to promote Park West Gallery,  including (a) a February 2001 *USA Today* article where both Hochman and Scaglione were quoted with respect to pricing of art on cruise lines, and (b) numerous other articles discussing the sale of art on cruises or Park West generally.

4.    A January 28, 2009, interview of Scaglione by Paul W. Smith on WJR radio.

5.    Spending over $600,000 on public relations, media articles and other efforts in 2007, 2008 and 2009, allegedly to influence the Dali fraud controversy *vis a vis* Park West.

6.      Having a section titled "Reputation Management" on its website; in this section, Park West encourages its users to learn about the lawsuit [there is no evidence when this section was first put on the website - the pages provided to the Court are dated 12/17/2009].

7.      Park West's expert and retained appraiser, Bernard Ewell, running a blog where "he has mercilessly slandered [Hochman and the FAR] Defendants for over a year" as of December 2009.

8.      A "YouTube" station with videos of Morris Shapiro and Bernard Ewell allegedly discussing "the Dali Controversy," which videos were created on April 14, 2008, and April 15, 2008, respectively.

9.      Park West has held multiple charitable events seeking to foster the goodwill of the general public [Hochman and FAR Defendants do not specify any dates for those events and no flyers or information have been provided with respect to such events].

10.     Park West issued a release related to "Park West Gallery Day" for the City of Southfield, an event held on June 15, 2009.

11.     Park West paid Lee Catterall to write a supplement to the book "The Great Dali Art Fraud."

Hochman asserts that most of these public relations efforts were well under way before Hochman's November 2007 interview which forms the basis of the defamation claims against him. The Court notes that the earliest date that Park West has accused any of the FAR Defendants of defaming Park West was August 2007.  To the extent there is an ability to identify the date/timing of the foregoing eleven "events," however, the record reveals that Hochman's assertion is inaccurate.  In fact, the key events cited by Hochman actually demonstrate that Park West "injected" itself into the public controversy in response to the alleged defamatory statements of Hochman and the FAR Defendants.  Almost all the Park West actions identified by Hochman and/or the FAR Defendants took place or began after the alleged defamatory statements at issue in this case were made (*See* items 1-2, 4-8 and 10).

19

As the Supreme Court has stated, "[c]learly, those charged with defamation cannot, by their own conduct, create their own defense by making the claimant a public figure." *Hutchinson v. Proxmire*, 443 U.S. 111, 135 (1979). Thus, the fact that Park West: (1) wrote articles defending itself (*e.g.*, the Morris Shapiro article), (2) responded to press inquiries and/or engaged in interviews (*e.g.,* the interview on the Paul W. Smith show), and (3) spent money on advertising (approximately $600,000 since 2007) and its own website (the Reputation Management section, the Press Release section and the YouTube videos), fail to demonstrate that Park West voluntarily injected itself to the forefront of the public controversy. *Gertz*, 418 U.S. at 352. The Court concludes instead that Park West's activities constitute reactions to the alleged defamatory statements and reflect that Park West "was dragged unwillingly into the controversy." *Wolston v. Reader's Digest Assoc., Inc.*, 443 U.S. 157, 167 (1979).

No evidence has been provided of the charitable events that Park West allegedly held or the date(s) of such events, and, based on the evidence in the record, it is unclear when Park West entered into an arrangement with Lee Catterall to write the supplement to "The Great Dali Art Fraud" (*i.e.*, it is possible, and appears likely, that such arrangement was entered into after the alleged defamatory statements began). Moreover, Hochman and the FAR Defendants have provided no evidence that Park West's public relations efforts to address the Dali fraud controversy generally, or Park West's involvement in it, specifically, were well under way before Hochman's November 2007 interview.

The FAR Defendants argue that an April 8, 2007, article in *The Arizona Republic* demonstrates that the public controversy regarding Park West's sales practices and authenticity of its art began well before the alleged defamatory statements. That article, however, barely mentions Dali works and makes no suggestion that the Dali works mentioned (or any other Dali works sold

by Park West) were fakes or that Park West engaged in fraud, the use of an automated pencil device to apply signatures to artworks, or that Park West engaged in criminal activity. As such, the Court concludes that the April 8, 2007, article in *The Arizona Republic* does not constitute evidence of Park West's involvement in the Dali fraud controversy generally or that Park West was injecting itself into the Dali fraud controversy.

Hochman and the FAR Defendants direct the Court to a recent case decided in the Eastern District of Michigan where a plaintiff corporation was determined to be a "limited purpose public figure." *See LL NJ, Inc. v. NBC-Subsidiary (WCAU-TV),* 2008 WL 1923261 (E.D.Mich. 2008).[6] In *LL NJ*, the plaintiff had voluntarily taken a public position on the propriety of its "life lift" procedure, was savvy in its use of the media, and had taken a leading role in "debunking" its critics and promoting its product. The *LL NJ* plaintiff also spent large amounts on advertising and was featured in many media broadcasts, thereby "invit[ing] public attention, comment, and criticism." *Id.* at *19. In determining that the company was a limited-purpose public figure, the *LL NJ* court stated:

> Lifestyle Lift obviously has no difficulty using the media, and it has plenty of resources to communicate its own side of the story. The third factor also suggests that Lifestyle Lift is a limited-purpose public figure because it has played a prominent role in the controversy. . . Therefore, since a public controversy existed prior to the defendants' broadcast and Lifestyle Lift "voluntarily inject[ed]" itself into that controversy, the Court concludes as a matter of law that the Lifestyle Lift companies are limited-purpose public figures.

*Id.*

The FAR Defendants argue that the conduct of the corporation in *LL NJ* is virtually identical to Park West's conduct here, but the Court finds the instant case distinguishable from *LL NJ* in two

---

[6]The Court is not, of course, required to follow the *LL NJ* decision.

critical aspects. First, in *LL NJ*, the public controversy at issue was the propriety of the plaintiff's procedure, *i.e.*, a procedure that the plaintiff created and promoted through advertising and the media. In the instant case, although there is a public controversy involving the authenticity of Dali works (and signatures), Park West did not create that controversy, nor, based on the record before the Court, did Park West vigorously or publicly injected itself into the controversy prior to the alleged defamatory statements of Hochman and the FAR Defendants.

Second, in *LL NJ*, the plaintiff pursued media access and stories and expended significant sums on advertising prior to the publication of the alleged defamatory statements at issue in that case. Moreover, the Court found that the *LL NJ* plaintiff's pursuit of media access and the vast advertising campaign were designed to promote and influence the debate on the plaintiff's procedure long before the alleged defamatory statements were made. In this case, although there is evidence that Park West has spent approximately $600,000 on advertising in the last three years and has taken advantage of the ability to access the media during the same period, Hochman and the FAR Defendants have failed to demonstrate that Park West tried to influence the outcome of the public controversy regarding Dali works prior to August 2007. More specifically, there is no evidence that Park West devoted advertising dollars to influence the Dali fraud controversy prior to 2007. In addition, the various articles and publications of Park West identified by Hochman and the FAR Defendants that were published prior to August 2007 promote Park West generally; such articles and publications do not seek to influence the public controversy regarding the Dali works.

For the foregoing reasons, the Court concludes that Park West did not thrust itself to the forefront of the Dali works' controversy in order to influence the resolution of that controversy until after the alleged defamatory statements of Hochman and the FAR Defendants were published.

22

Accordingly, the Court also concludes that Hochman and the FAR Defendants have not established the second element necessary to find that Park West is a limited purpose public figure.

### c. Conclusion

For the reasons set forth above, the Court concludes that Park West is not a public figure. Even if Park West were deemed a public figure, however, the Court would still find Park West's defamation claims viable as to Hochman and the FAR Defendants because there is sufficient evidence from which a reasonable juror could conclude that there is clear and convincing evidence that each of them acted with actual malice. *See* Section IV.C.2. *infra*.

### 6. Conclusion

Accordingly, for the reasons discussed above:

(a)     The non-verbal defamation claims in Count I of the Amended Complaint in Case No. 08-12247 remain viable as to FAR, but any claims based on verbal defamatory statements by FAR are dismissed;

(b)     All defamation claims in Count I of the Amended Complaint in Case No. 08-12247 remain viable as to Franks;

(c)     The following defamation claims in Count I of the Amended Complaint in Case No. 08-12247 remain viable against Hochman:

   i.     "We're seeing things, that are not listed in the official catalog of the graphic work of Dali by Albert Field, listed and sold as 'authentic' according to Park West. We know they're not";

   ii.    Park West is "selling fake art";

   iii.   "Park West is the bandit";

   iv.    "these works are false ... the signatures [are] all the same ... they're done with an auto pencil device"; and

   v.     "Park West is applying some sort of Dali signature to the works to enhance their value, to make them look like they're something special or different."

23

(d)     The following defamation claims in Count I of the Amended Complaint in Case No. 08-12247 are dismissed with respect to Hochman:

      i.    "Park West and its people have no conscience"; and

      ii.    "So yes, I do put a lot of blame on Park West. I think their actions are horrible."

(e)     All defamation claims in Count I of the Amended Complaint in Case No. 08-12247 are dismissed with respect to the Dali Gallery; and

(f)     The non-verbal defamation claims in Count I of the Complaint in Case No. 08-12274 remain viable against Phillips, but any claims based on verbal defamatory statements by Phillips are dismissed.

## C.     Remaining Claims

Hochman and the FAR Defendants first argue that all of Park West's remaining claims (Counts II-V) fail because they are derivative of Park West's defamation claims. As the defamation claims against Hochman and the FAR Defendants are viable, however, this argument lacks merit.

### 1.     Count II

Hochman argues that Park West's claim of "Tortious Interference" (Count II) must be dismissed because Park West has failed to identify any contract that has been breached, that such breach was instigated by Hochman or that Hochman committed a *per se* wrongful act. The elements of tortious interference with a contract are: "(1) a contract, (2) a breach, and (3) an unjustified instigation of the breach by the defendant." *Mahrle v. Danke*, 216 Mich.App. 343, 350 (1996).[7]

---

[7]In its response brief, Park West "[s]eems to treat the torts of interference with an advantageous business relationship and interference with an existing contract as synonymous. These torts, however, are distinct. The elements of the latter tort are: (1) the existence of a contract; (2) a breach of the contract; and (3) instigation, without justification, of the breach by the alleged tortfeasor. . . . Regarding the tort of interference with an advantageous relationship or expectancy, "an advantageous *contractual* relationship is sufficient, but not necessary, to state a cause of action." *Bonelli v. Volkswagen of Amer., Inc.*, 166 Mich.App. 483, 496 n.4 (1988). Accordingly, the Court is not persuaded by Park West's response that its "Tortious Interference" claim "may be supported by the demonstration of a valid business expectancy or advantage." In fact, the difference in the wording between Count II ("its customers") and Count III ("its prospective customers") reflects the distinction between interference with a present (existing) relationship that Park West enjoyed (Count II) versus interference with prospective relationships that Park West sought (Count III).

Park West made the following allegations against FAR, Franks and Hochman in its Amended Complaint in Case No. 08-12247:

> 61.    Defendants have initiated or interacted with many Park West customers with whom Park West enjoyed a business relationship and Defendants deliberately and maliciously told such Park West customers, *inter alia*, that Park West had sold them fake or not authentic artwork.

> 62.    Defendants' statements were false and were intended to harm and destroy the good will and business relationship between Park West and its customers.

> 63.    As the direct and proximate result of Defendants' interference with Park West's relationship with its customers, Park West has been damaged.[8]

Park West has not, however, alleged, identified or produced any evidence of an existing contract or business relationship to which Park West was a party that Hochman or the FAR Defendants interfered.  Accordingly, the Court grants Hochman's motion for summary judgment with respect to Count II of Park West's Amended Complaint in Case No. 08-12247.

The Court notes that the FAR Defendants did not specifically join in Hochman's argument or otherwise argue Park West's failure to produce evidence of an existing contract with which the FAR Defendants interfered.  As Park West failed to allege, identify or produce evidence of an existing contract or business relationship to support the Tortious Interference claim, however, the Court concludes that Park West likewise is unable sustain its Tortious Interference claim against the FAR Defendants.  The Court therefore also dismisses Count II of the Amended Complaint in Case No. 08-12247 as to FAR and Franks and Count II of the Complaint in Case No. 08-12274.

   *2.    Count III*

---

[8]Park West makes the same allegations against Phillips at Paragraphs 37-39 of the Complaint in Case No. 08-12274.  The Court notes that allegations in Counts II-V of the Amended Complaint in Case No. 08-12247 and Counts II-V of the Complaint in Case No. 08-12274 are substantively the same.

In Michigan, an interference with prospective business advantage claim requires:

1.    The existence of a valid business relationship or expectancy;

2.    Knowledge of the relationship or expectancy on the part of the defendant;

3.    An intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy; and

4.    Resultant damage to the plaintiff.

*Lakeshore Comm. Hosp. v. Perry*, 212 Mich.App. 396, 401 (1995).

Hochman argues that Count III should be dismissed because Park West has not specifically articulated the business advantage or expectancy with which Hochman has interfered.  In order to prevail on its interference with prospective business advantage claim, Park West must plead and prove "the existence of a valid business expectancy.  The expectancy must be a reasonable likelihood or probability, not mere wishful thinking." *Trepel v. Pontiac Osteopathic Hosp.*, 135 Mich.App. 361, 377 (1984). *See also P.T. Today, Inc. v. Office of Financial and Ins. Servs.*, 270 Mich.App. 110, 151 (2006) ("plaintiffs must show that their business expectancy is a reasonably likely or probable expectancy"); *Schipani v. Ford Motor* Co., 102 Mich.App. 606, 621-23 (1982) (to survive a summary judgment motion, a plaintiff must assert a specific and reasonable prospective economic advantage that was interfered with); *Wilkerson v. Carlo*, 101 Mich.App. 629, 635 (1981) ("plaintiff . . . must make sufficient allegations to support his theory of liability").

Park West made the following allegations against FAR, Franks and Hochman in its Amended Complaint in Case No. 08-12247:

66.    Defendants have intentionally interfered with Park West's relationships with prospective customers, clients, and business associates and maliciously told the world at large and the art world in particular, that Park West, *inter alia*, sells them fake or not

26

authentic artwork, and engages in fraudulent and untrustworthy activities.

67.     Defendants' statements were false and were intended to harm and destroy the business relationship between Park West and its prospective customers, clients, and business associates.

68.     As the direct and proximate result of defendants' interference with Park West's relationships with its prospective customers, clients, and business associates, Park West has been damaged.[9]

Based on the foregoing, the Court concludes that Park West has alleged prospective business advantages or expectancies with which Hochman and the FAR Defendants interfered.  In addition, the expert report and deposition testimony of Park West's expert, Lawrence Simon, constitute evidence from which a reasonable juror could conclude that the defamation campaign orchestrated by Hochman and the FAR Defendants caused customers who otherwise would have purchased from Park West not to do so.

The FAR Defendants argue that Park West must be able to demonstrate that they intentionally committed a *per se* wrongful act, or committed a lawful act with malice and unjustified in law, for the purpose of invading the contractual rights, business relationship or prospective business advantage of another. *Hoffman v.* Roberto, 85 B.R. 406, 415 (1987); *Feldman v. Green*, 138 Mich.App. 360, 369 (1984).  The FAR Defendants argue that they did not publish any statements about Park West with malice and that all evidence is to the contrary.  The question whether the evidence is sufficient to support a finding of malice is a question of law for the Court to determine. *See Harte-Hanke Commun., Inc. v. Connaughton*, 491 U.S. 657, 685 (1989).  For the reasons stated below, the Court concludes that there is sufficient evidence in the record upon which a reasonable

_____

[9]Park West makes the same allegations against Phillips at Paragraphs 42-44 of the Complaint in Case No. 08-12274.

27

fact finder could conclude that each of Franks, Phillips, FAR (through the actions of its representatives, namely Franks and Phillips) and Hochman acted with malice.

In the context of defamation claims and claims deriving therefrom (*i.e.*, the claim for interference with prospective business advantage in Count III of the Amended Complaint in Case No. 08-12247 and the Complaint in Case No. 08-12274), "actual malice" exists when the defendant knowingly makes a false statement or makes a false statement in reckless disregard of the truth. *New York Times Co. v. Sullivan,* 376 U.S. 254, 279-80 (1964). In this case, each of Franks and Phillips has submitted an affidavit wherein the following conclusory statements are made:

> a.    I have only made statements (verbally and in writing) which I believed to be true and accurate at the time they were made.
>
> b.    "I had no malice when making statements about Park West Galleries, Inc. I have only sought to report the facts, in good faith."

Both Phillips and Franks (allegedly in her role as CEO of FAR but presumably also with respect to her postings in her individual capacity under the screen name "farandaway") also state that any articles or statements were published only after extensive research on the subject.[10]

As Park West argues, however, Phillips and Franks have both admitted that they have no training or education in fine art, little, if any, experience in the sale of fine art, and have no education in journalism or investigative reporting. Despite this lack of training and knowledge, Phillips and Franks (in their individual capacities and on behalf of FAR) made statements that, if false, defame Park West. The fact that they did "extensive research" does not demonstrate that they would have the ability to know if the statements they made were true.

---

[10]Franks and Phillips state that their extensive prior investigation included: (1) discussions with law enforcement agents; (2) interviews with victims of Park West bad business practices; (3) discussions with whistle blowers at or associated with Park West; (4) consultations with experts in the art industry; (5) extensive research; (6) as well as citations to documents already in the public sphere such as court filings and newspaper articles.

Moreover, contrary to what the FAR Defendants seem to suggest, they did not merely report that customers of Park West complained that Dali artwork purchased from Park West was overpriced or that customers or experts in the art world questioned the authenticity of Dali artworks, in general, and that sold by Park West, specifically. Rather, each of the FAR Defendants published statements that (a) Park West committed fraud and engaged in fraudulent misrepresentation, (b) sold fake Dali arts, and (c) engaged in criminal behavior (*i.e.*, was a criminal). As none of the FAR Defendants had looked at the artwork that formed the basis of their statements, the Court finds that there is evidence that such statements were made with "reckless disregard of whether they were false or not." *Herbert v. Lando*, 441 U.S. 153, 156 (1979) (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964)). Accordingly, the Court finds that a reasonable juror could conclude that there is clear and convincing evidence that the FAR Defendants acted with malice when making the alleged defamatory statements attributed to them (FAR, of course, acts through its representatives, Franks and Phillips).

Hochman asserts that his statements stem from:

> essentially two observations: (1) that Dali prints sold by Park West were over-priced and (2) that Park West sells fake Dali prints. The first observation has been established through Mr. Ewell's testimony where he stated the same thing. In regard to the second observation, there was testimony that Park West has refunded 'a lot' to customers. Therefore, in the end, Mr. Hochman's statements are truthful and no defamation has occurred.

As set forth in Section IV.A.4., however, Hochman's statements were not so limited. In addition to saying Park West sold fake Dali prints, Hochman stated that Park West is a bandit and applies signatures to artwork it sells with an auto-pencil device. In addition, contrary to Hochman's

assertion, the "truth" about the authenticity of the Dali artwork sold by Park West is the central issue in this case, not something that has been established because Hochman says it has.

As is true with Franks and Phillips, there is no evidence that Hochman ever inspected the artwork about which he made the alleged defamatory statements. On the other hand, there is evidence in the record that Hochman: (1) purchased some Dali works from the same source as Park West (an art dealer, Cyril Boisson, who acquired those works from the Alberetto collection), and (2) relied on the same Dali expert (Albert Field) as Park West to authenticate Dali signatures when purchasing Dali work. For all of these reasons, the Court finds that a reasonable juror could conclude that there is clear and convincing evidence that Hochman acted with malice when making the alleged defamatory statements attributed to him.

Accordingly, the Court denies Hochman's and the FAR Defendants' motions for summary judgment with respect to Count III of Park West's Amended Complaint in Case No. 08-12247 and Count III of the Complaint in Case No. 08-12274.

3.    *Count IV*

The FAR Defendants argue that Park West cannot succeed on its claim for permanent injunctive relief (Count IV) for three reasons: (a) permanent injunctive relief is unjustified where all of Park West's other claims have been dismissed, (b) Park West has failed to show that monetary damages would fail to compensate Park West for its alleged injuries, and (c) Park West has failed to show it would be in the public interest to prevent the FAR Defendants from writing about issues of public concern, such as "fraud in the art world, the unethical and likely criminal actions of Park West, and the many victims of Park West's business practices."[11]

---

[11]Hochman's only argument for dismissal of Count IV of Case No. 08-12247 was premised on the dismissal of the remainder of Park West's claims.

> According to well-established principles of equity, a plaintiff seeking
> a permanent injunction must satisfy a four-factor test before a court
> may grant such relief. A plaintiff must demonstrate: (1) that it has
> suffered an irreparable injury; (2) that remedies available at law, such
> as monetary damages, are inadequate to compensate for that injury;
> (3) that, considering the balance of hardships between the plaintiff
> and defendant, a remedy in equity is warranted; and (4) that the
> public interest would not be disserved by a permanent injunction.
> *See, e.g., Weinberger* v. *Romero-Barcelo,* 456 U.S. 305, 311-13
> (1982); *Amoco Production Co.* v. *Gambell,* 480 U.S. 531, 542 (1987).

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

The argument in subsection (a) lacks merit because Park West's defamation claims have not been dismissed. Therefore, there is a justifiable basis for Park West's pursuit of permanent injunctive relief. The FAR Defendants next argue that Park West has failed to show that monetary damages would fail to compensate Park West for its alleged injuries, as evidenced by the fact that Park West is seeking tens of millions of dollars from Defendants in these actions. The Court finds that there is evidence that monetary damages will not necessarily suffice because, even if Park West is compensated for its losses to date, it may not be possible to determine the precise impact of the wrongful harm to its reputation that Park West has suffered, and will continue to suffer, if the alleged defamatory remarks are, in fact, false.

The FAR Defendants also argue that Park West has failed to establish that the public interest favors preventing FAR (or Franks or Phillips) "from writing about issues of public concern, such as fraud in the art world, the unethical and likely criminal actions of Park West, and the many victims of Park West's business practices." Although there is a public interest in ensuring that persons can write about the foregoing issues, there is no public interest in protecting a person's right to engage in the publication of false and defamatory statements. Those two countervailing interests are the essence of this litigation (including the counter-claims filed by FAR and Phillips). In other

31

words, until a finder of fact determines whether the statements at issue in this matter were appropriate or were false and defamatory, it would be premature for the Court to make a ruling based on what the public interest favors.  Accordingly, the Court denies Hochman's and the FAR Defendants' motions for summary judgment with respect to Count IV of the Amended Complaint in Case No. 08-12247 and Count IV of the Complaint in Case No. 08-12274.

  *4. Count V*

  The elements of a cause of action for civil conspiracy are: (1) a concerted action, (2) by a combination of two or more persons, (3) to accomplish a criminal or unlawful purpose or to accomplish a lawful purpose by criminal or unlawful means. *See Admiral Ins. Co. v. Columbia Cas. Ins. Co.*, 194 Mich.App. 300, 313 (1992).  Hochman's and the FAR Defendants' argument for dismissal of Park West's civil conspiracy claim in Count V is premised on the Court dismissing the actionable torts of defamation, tortious interference with a business relationship, and interference with prospective business advantage.  If this premise were true, Park West would be unable to prove the requisite civil conspiracy element that "a separate, actionable" tort had been committed by the FAR Defendants and Hochman. *Advocacy Org. for Patients & Providers v. Auto Club Ins. Assn.*, 257 Mich.App. 365, 384 (2005); *Michael v. Clarkson*, 1996 Mich.App. LEXIS 1510. *See also Linton v. Streetsboro City Sch. Dist. Bd. of Educ.*, 162 Fed.Appx. 532 (6th Cir. 2006).  As the defamation claims remain, however, the Court concludes that Park West's civil conspiracy claims shall not be dismissed on that basis.

  Hochman also argues that there is no evidence of concerted action by he and the FAR Defendants.  The Court concludes, however, that the publication of the Hochman/Phillips interview on the FAR website on November 6, 2007, as well as other conduct discussed herein, constitutes

evidence which would allow a reasonable fact finder to conclude that there was a concerted action by two or more persons to commit an actionable tort.

Accordingly, the Court denies the motions for summary judgment filed by Hochman and the FAR Defendants insofar as they seek dismissal of Count V of the Amended Complaint in Case No. 08-12247 and Count V in Case No. 08-12274.

## V.  CONCLUSION

Accordingly, and for the reasons set forth above, the Court hereby GRANTS IN PART and DENIES IN PART each of the following motions:

A.    Motion for Summary Judgment filed by FAR (Docket #168 in Case No. 08-12247 and Docket #136 in Case No. 08-12274).

B.    Motion for Summary Judgment filed by Phillips (Docket #169 in Case No. 08-12247 and Docket #137 in Case No. 08-12274).

C.    Motion for Summary Judgment filed by Franks (Docket #170 in Case No. 08-12247 and Docket #138 in Case No. 08-12274).

D.    Motion for Summary Judgment filed by Hochman and the "Dali Gallery (Docket #171 in Case No. 08-12247 and Docket #139 in Case No. 08-12274).

IT IS SO ORDERED.

S/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated:  February 26, 2010

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on February 26, 2010.

S/Marie E. Verlinde
Case Manager
(810) 984-3290