UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PARK WEST GALLERIES, INC.,

      Plaintiff,

                                          Case No.  2:08-cv-12247

v.

                                          Hon. Lawrence P. Zatkoff

GLOBAL FINE ART REGISTRY, LLC,
THERESA FRANKS, and BRUCE HOCHMAN,

      Defendants.

_____/

PARK WEST GALLERIES, INC.,

      Plaintiff,                           Case No.  2:08-cv-12274

v.

                                            Hon. Lawrence P. Zatkoff

DAVID CHARLES PHILLIPS,

      Defendant.

_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the
United States Courthouse, in the City of Port Huron,
State of Michigan, on March 10, 2010

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I.  INTRODUCTION**

This matter is before the Court on the following Motions in Limine:

1.      Plaintiff's Motion to Exclude Evidence of and Reference to, Other Legal Disputes
      (Docket #188).[1]

---

[1]All Docket Nos. set forth in this Opinion and Order refer to Case No. 08-12247.

2.      Motion to Exclude Park West's "Expert" Daniel David, filed by Defendants David Charles Phillips, Theresa Franks, and Global Fine Arts Registry, LLC (the "FAR Defendants") (Docket #198).

3.      Plaintiff's Motion to Exclude the Testimony of "Expert" Roy Saper (Docket #204).

4.      Plaintiff's Motion to Preclude Any Party from Calling Plaintiff's Attorneys as Witnesses (Docket #206).

5.      Motion to Preclude Admission of Evidence of Alleged Wrongful Conduct on the Part of Hochman Outside of the Five Statements Outlined in the Court's February 26, 2010 Order, filed by Hochman (Docket #224).

6.      Motion to Exclude Admission of Any Evidence With Respect to Plaintiff's Civil Conspiracy Claim Against the Defendants that Do Not Relate to the Remaining Claims At Issue in this Case, filed by Hochman (Docket #226).

All parties were ordered to and had an opportunity to file a response to the motions set forth above. The Court finds that the facts and legal arguments pertinent the Motions are adequately presented in the parties' papers, and the decision process will not be aided by oral arguments. Therefore, pursuant to E.D. Mich. Local R. 7.1(e)(2), it is hereby ORDERED that the Motions be resolved on the briefs submitted, without this Court entertaining oral arguments. Each motion is addressed below.

## II. ANALYSIS

### A.     Motion to Exclude Evidence of and Reference to, Other Legal Disputes

Plaintiff moves to exclude any and all evidence of, and references to, all other litigation or disputes ever filed involving any of these parties, including Plaintiff's other recent legal disputes. Hochman has joined in Plaintiff's motion to exclude other legal disputes involving Hochman. Plaintiff is concerned that Global Fine Art Registry, LLC ("FAR") or Defendant Theresa Franks ("Franks") may seek to tell the jury about other suits and/or disputes in which Plaintiff is or has been

engaged to inflame the jury, to create an inference that Plaintiff is "always in trouble," or to suggest that FAR's claims are not isolated events. Plaintiff argues that this evidence is irrelevant, more prejudicial than probative, and will result in confusion of the issues and unnecessarily lengthen trial by creating multiple trials within the trial.

Defendants FAR, Franks, and David Charles Phillips ("Phillips") respond that they do not intend to introduce evidence of other legal disputes to inflame the jury or show that Plaintiff is always in trouble. Instead, Defendants seek to introduce such evidence to prove that (1) their statements were true; (2) Defendants had notice of Plaintiff's history of having problems with customers for reasons related to Defendants' statements; (3) Defendants investigated Plaintiff with due diligence before writing about it; and (4) the harm done to Plaintiff's reputation was not the result of Defendants' conduct. As a result, Defendants contend that evidence of Plaintiff's other legal disputes is essential to their ability to defend themselves against Plaintiff's defamation claims.

Under the Federal Rules of Evidence, relevant evidence is that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. "Evidence which is not relevant is not admissible." Fed. R. Evid. 402. Further, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.

The Court finds that the relevance, if any, that Plaintiff's other legal disputes have in this action is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and considerations of undue delay and waste of time. References to other legal disputes would

considerably extend the length of trial and force the Court to conduct trials within the trial. Plaintiff

would have to present evidence explaining why the other cases are different from the present case,

and Defendants would then spend time rebutting this evidence with their own presentation about the

unrelated cases. Therefore, Plaintiff's motion to exclude evidence of, and reference to, other legal

disputes [dkt 188] is GRANTED.

**B.      Exclude Park West's "Expert" Daniel David**

The FAR Defendants ask this Court to preclude Plaintiff from introducing the deposition

testimony of Daniel David ("David") as an expert in the works of Salvador Dali ("Dali") artwork.

Specifically, the Defendants wish to exclude David's opinions as to:

(1)      The alleged authenticity of Dali's signature;

(2)      The alleged authenticity of provenance documents supplied by Park West to
customers;

(3)      Information about Dali in general or his artwork;

(4)      Hearsay statements that David allegedly heard from Jean Estrade (the person whom
David studied artwork under) about the authenticity of certain Dali signatures, which
were relied upon by David to support his opinions about the authenticity of Dali
signatures or prints;

(5)      The alleged credibility of Jean Estrade ("Estrade"); and

(6)      The actions and workings of Les Heures Claires, including details related to the
publishing of the Divine Comedy prints for which he has no personal knowledge.

David is presently the manager, director, and majority shareholder of Les Heures Claires,

a publisher of many graphic works by Salvador Dali, including the *Divine Comedy*. David, a trained

psychologist, first became involved in the art world in the 1960s when he met Jean Estrade, then the

director of Les Heures Claires. After a fire at Les Heures Claires in 1983 led to its liquidation,

Estrade and David formed a limited liability company, Lignes et Formes, in 1994 to purchase all the

remaining assets and liability of Les Heures Claires and continue its business. Between 1994 and

Estrade's death in 2005, Estrade took on David as, essentially, an apprentice, where David observed

Estrade's methods for examining and authenticating Dali artwork. David learned the publishing

business in general from Estrade, as well as the details of the history and workings of Les Heures

Claires. This included information regarding Les Heures Claires' work with Dali. David also

learned how the history of these works were backed up with supporting documents, such as contracts

(collectively, provenance documents). He also learned how the sales of prints were transacted.

Under Estrade's tutelage, David assisted (the extent of which is unknown) in the publication of *Les

Amours* by Ronsard, *The Fables of La Fontaine* in two volumes, and *Cyrano de Bergerac*. Since

Estrade's death, David has continued the work of Les Heures Claires and published *L'Aiglon* and

*Mirages*, by Etienne Dinet.

Under Fed. R. Evid. 104(a), "[p]reliminary questions concerning the qualification of a person

to be a witness . . . shall be determined by the court." Under Fed. R. Evid. 702, a witness may testify

as to his opinion regarding specialized or technical knowledge if the witness is "qualified as an

expert by his knowledge, skill, experience, training, or education."

Defendants contend that the tutelage David received under Estrade is insufficient to qualify

him as an expert as to the authenticity of Dali's artwork or signature. Specifically, Defendants argue

that in addition to the fact that David has never met Dali or witnessed Dali sign his signature, David

admits the following:

    (1)      No art gallery or auctioneer has taken Dali prints to him for authentication;

    (3)      He has never testified as an expert prior to this case;

    (4)      He has never been paid, prior to this case, to authenticate a Dali painting;

(5)     He has never taken classes in appraising artwork;

(6)     He has never taken classes in authenticating artwork;

(7)     He has never studied art at any university;

(8)     He has never obtained a degree or certification in art;

(9)     He has never studied handwriting analysis or signature identification at any school, college, or university; and

(10)    He has never conducted lectures or presentations about Dali artwork.

Defendants contend that despite David's apprenticeship, he lacks the formal training and credentials that would render his opinions reliable.

Plaintiff responds that when a witness' area of expertise lies outside of the scientific fields, neither a degree nor certification is essential to be qualified to provide opinion testimony; rather, a person with knowledge or skill born of practical experience may qualify as an expert. *See First Tennessee Bank Nat. Ass'n v. Barreto*, 268 F.3d 319, 334-35 (6th Cir. 2001). Plaintiff also argues that a witness need not be an "outstanding practitioner" in the field to qualify as an expert. *U.S. v. Rose*, 731 F.2d 1337, 1346 (8th Cir. 1984). Based on his eleven-year apprenticeship with Estrade and his subsequent work with Les Heures Claires, Plaintiff contends that David possesses the requisite knowledge, skill, experience, and training to render an opinion as to the authenticity of Dali's signature and artwork.

Based on the above evidence, the Court finds that David possesses a level of knowledge, skill, experience, training, or education that may assist the trier of fact in understanding the evidence and assist in determining a fact in issue. Most significantly, David served as an apprentice to Estrade for eleven years, which is not unlike two of the experts proffered by Defendants, Nicholas Descharnes and Frank Hunter. Therefore, the Court DENIES Defendants' motion to preclude

Plaintiff from introducing David's deposition testimony to the extent it contains his opinions regarding the authenticity of Dali artwork or Dali's signature. David will be permitted to testify to those opinions subject to *voir dire* and cross-examination.

The Court does, however, GRANT Defendants' request to exclude David's deposition testimony to the extent it contains hearsay, *see* Fed. R. Evid. 802 ("[h]earsay is not admissible . . . ."), opines on the credibility of Estrade, *see United States v. Thomas*, 74 F.3d 676, 683-84 (6th Cir. 1996) (a witness' credibility is a determination for the fact finder), or discusses facts of which David lacks personal knowledge, *see* Fed. R. Evid. 602 ("A witness may not testify to a matter unless . . . the witness has personal knowledge of the matter.").

Accordingly, Defendants' motion in limine to exclude Park West's "Expert" Daniel David [dkt 198] is GRANTED IN PART and DENIED IN PART.

## C.    Exclude the Testimony of "Expert" Roy Saper

Plaintiff has filed a motion in limine seeking to exclude the testimony of Roy Saper ("Saper"), whom Defendants intend to call as both a lay and expert witness. The FAR Defendants and Hochman each have filed a response.

Plaintiff does not contest Saper's credentials as an art expert; rather, it challenges the sufficiency of Saper's expert report. Plaintiff reads Saper's expert report as containing only one opinion: that Plaintiff's business practices are dishonest and its artwork fraudulent. Plaintiff argues (1) that such an opinion does not require the testimony of an expert; and (2) that Saper should not be permitted to offer his expert opinion on any matters that were not disclosed in Saper's expert report.

The Federal Rules of Evidence permit a qualified expert to testify to his or her opinions. *See*

Fed. R. Evid. 702. Fed. R. Civ. P. 26(a)(2)(B)(I) requires that an expert witness produce a report that contains "a complete statement of all the opinions the witness will express and the basis and reason for them[.]" Even so, "[s]ection 26(a)(2)(B) does not limit an expert's testimony simply to reading his report. . . . The rule contemplates that the expert will supplement, elaborate upon, explain and subject himself to cross-examination upon his report. " *Thompson v. Doane Pet Care Co*., 470 F.3d 1201, 1203 (6th Cir. 2006).

A review of Saper's expert report confirms that the three-page document contains Saper's opinions on Plaintiff's business practices and several anecdotes regarding Saper's prior reviews of artwork sold by Plaintiff. Much of the report is better characterized as lay testimony rather than expert testimony. Regarding those opinions that are present, the Court finds that the opinions "do not easily lend themselves to scholarly review or to traditional scientific evaluation." *First Tenn. Bank Nat. Ass'n v. Barreto*, 268 F.3d 319, 335 (6th Cir. 2001) (affirming admission of expert testimony based on forty years of banking experience). Therefore, Saper will be permitted to testify to those opinions subject to *voir dire* and cross-examination.

Plaintiff also contends that Saper's expected expert testimony regarding Plaintiff's alleged dishonest and/or fraudulent business practices is unnecessary because such a conclusion is properly determined by the jurors without the need to resort to an expert opinion. The Court finds that Saper's specialized knowledge of the art world suffices to present his expert opinion on Plaintiff's business practices, as he can provide insight to the standards and practices employed in that field, which may not be common knowledge. The jury will be free to decide whether or not to accept his opinion.

The Court has previously ruled that all expert witnesses will be permitted to testify only

about the timely-disclosed opinions in their expert reports (Docket #271).

Finally, Plaintiff objects to potential testimony regarding Saper's personal experiences with Plaintiff. Plaintiff contends that such testimony would constitute improper expert testimony, would be based largely on hearsay, and is generally irrelevant. The Court notes that Defendants have disclosed Saper as a fact witness, and it appears that the testimony that Plaintiff seeks to exclude would constitute proper lay testimony. Therefore, Saper will not be precluded from testifying as a lay witness, and the Court will entertain specific hearsay and relevancy objections at trial.

Accordingly, Plaintiff's motion in limine to exclude the testimony of Roy Saper [dkt 204] is GRANTED IN PART and DENIED IN PART. Saper may testify as an expert witness to only those opinions disclosed in his expert report, and he may testify as a lay witness.

**D.      Preclude Any Party from Calling Plaintiff's Attorneys as Witnesses**

In light of the fact that Defendants have listed two of Plaintiff's attorneys, Robert Burlington and Jaye Quadrozzi on their witness lists, Plaintiff asks this Court to preclude any party from calling Plaintiff's attorneys as witnesses in this case. Defendants seek to call Quadrozzi as a witness at trial to: (1) prove their defamation counterclaim, which arises out of statements made by Quadrozzi; (2) authenticate a letter Quadrozzi allegedly sent to FAR; and (3) defend against Plaintiff's defamation claims by showing that Quadrozzi, and therefore Plaintiff, had knowledge of customer complaints. As Defendants state in their response, "when an adversary declares his intent to call opposing counsel as a witness . . . the court should determine whether counsel's testimony is, in fact, genuinely needed." *Connell v. Clairol, Inc.*, 440 F. Supp. 17, 19(N.D. Ga. 1977).

Here, the Court finds that the testimony of Quadrozzi is not genuinely needed. Regarding Defendants' defamation counterclaim, Defendants must prove the following: (1) Quadrozzi was

acting as an agent of Plaintiff when the statements were published; (2) that the statements were false

and defamatory; (3) that the statements consisted of an unprivileged publication to a third party; (4)

fault amounting to negligence; and (4) either actionability per se or special harm. However, Plaintiff

has agreed to stipulate that: (1) she drafted and sent the communication containing the allegedly

defamatory statement; (2) Defendants' exhibit regarding the communication is an authentic copy

of the original; and (3) she was acting as counsel for Plaintiff at the time the communication was

drafted and sent. Whether the statements were false and defamatory and whether Quadrozzi was

negligent in making the statements in question are issues for the jury to decide. Given the wealth

of circumstantial evidence that will be introduced at trial, Quadrozzi's testimony is not genuinely

needed.

Defendants have also failed to show that Quadrozzi's testimony is essential for their other

counterclaims and defenses. In support of their counterclaim against Plaintiff under the Lanham

Act, Defendants seek to call Quadrozzi as a witness to prove that Plaintiff received a letter sent by

FAR. However, Defendants can prove that Plaintiff received FAR's letter by other means. In

support of their defense against Plaintiff's defamation claims, Defendants seek to call Quadrozzi to

prove the truth of its statements (that Plaintiff knowingly sold inauthentic artwork) by introducing

statements by Quadrozzi acknowledging customer complaints. However, Defendants may prove

the truth of its statements in a variety of other ways. Therefore, the Court finds that Quadrozzi's

testimony is not genuinely needed.

The Court also finds that Defendants have not provided legitimate reasons as to why

Burlington's testimony is genuinely needed. None of the Defendants maintain a defamation

counterclaim against Plaintiff arising out of Burlington's statements. Defendants have also made

no argument that Burlington's testimony is needed to pursue its Lanham Act counterclaim. Instead, Defendants argue that Burlington's testimony is needed to defend against Plaintiff's defamation claim by showing that documents authored by Burlington admit Plaintiff's knowledge regarding its alleged sale of inauthentic art. However, as Defendants admit, Burlington's testimony is only needed to a "lesser extent." Therefore, the Court finds that Defendants have failed to show that Burlington's testimony is genuinely needed to pursue its claims or defenses.

Accordingly, Plaintiff's motion in limine to preclude any party from calling Plaintiff's attorneys as witnesses [dkt 206] is GRANTED.

**E.    Preclude Admission of Evidence of Alleged Wrongful Conduct on the Part of Hochman Outside of the Five Statements Outlined in the Court's February 26, 2010 Order**

Hochman asks the Court to enter an order prohibiting Plaintiff from introducing any evidence of alleged wrongful conduct on the part of Hochman, other than the five allegedly defamatory statements set forth in the Court's February 26, 2010, Opinion and Order. In that Opinion and Order, the Court ruled that Plaintiff's defamation claim against Hochman was limited to those five statements. Hochman expresses concern that Plaintiff will seek to offer evidence of opinions he has given with respect to artwork sold by Plaintiff, including appraisals he provided to his clients regarding the authenticity of Dali works such clients purchased from Plaintiff. Hochman asserts that any other evidence would be irrelevant and unfairly prejudicial and, therefore, inadmissible pursuant to Fed.R.Evid. 401 and 403.

Plaintiff acknowledges that the five statements identified by the Court constitute the only wrongful conduct at issue with respect to Plaintiff's *defamation* claim against Hochman. Plaintiff argues, however, that other evidence may support Plaintiff's claim against Hochman for interference with prospective business advantage. The Court agrees. The evidence contemplated by Hochman,

11

as described in the preceding paragraph, is precisely the type of evidence which is relevant and not unfairly prejudicial with respect to an interference with prospective business advantage claim.

Accordingly, for the reasons set forth above, Hochman's motion to preclude admission of evidence of alleged wrongful conduct on the part of Hochman outside of the five statements outlined in the Court's February 26, 2010 Order [dkt 224] is DENIED.

**F.      Exclude Admission of Any Evidence With Respect to Plaintiff's Civil Conspiracy Claim Against the Defendants that Do Not Relate to the Remaining Claims At Issue in this Case**

With respect to Plaintiff's civil conspiracy claim, Hochman moves the Court to preclude Plaintiff from introducing evidence that does not relate to the remaining claims at issue in this case (defamation and interference with prospective business expectancy) because such evidence would be irrelevant.

Plaintiff acknowledges and agrees that the tortious acts it will present in support of its civil conspiracy claim against Hochman will be limited to the evidence of tortious acts supporting Plaintiff's claims for defamation and interference with prospective business advantage. Plaintiff asserts that it should still be permitted to present evidence of acts taken by other co-conspirators (the FAR Defendants) in furtherance of the conspiracy. The Court agrees with Plaintiff's assertion, which is not inconsistent with Hochman's request to the Court.

Accordingly, Hochman's motion to exclude admission of any evidence with respect to Plaintiff's civil conspiracy claim against the Defendants that do not relate to the remaining claims at issue in this case [dkt 226] is GRANTED.

### III.  CONCLUSION

Accordingly, and for the reasons set forth above, IT IS HEREBY ORDERED that:

1.      Plaintiff's Motion to Exclude Evidence of and Reference to, Other Legal Disputes (Docket #188) is GRANTED.

2.      Motion to Exclude Park West's "Expert" Daniel David filed by the FAR Defendants (Docket #198) is GRANTED IN PART and DENIED IN PART.

3.      Plaintiff's Motion to Exclude the Testimony of "Expert" Roy Saper (Docket #204) is GRANTED IN PART and DENIED IN PART.

4.      Plaintiff's Motion to Preclude Any Party from Calling Plaintiff's Attorneys as Witnesses (Docket #206) is GRANTED.

5.      Motion to Preclude Admission of Evidence of Alleged Wrongful Conduct on the Part of Hochman Outside of the Five Statements Outlined in the Court's February 26, 2010 Order, filed by Hochman (Docket #224) is DENIED.

6.      Motion to Exclude Admission of Any Evidence With Respect to Plaintiff's Civil Conspiracy Claim Against the Defendants that Do Not Relate to the Remaining Claims At Issue in this Case, filed by Hochman (Docket #226) is GRANTED.


IT IS SO ORDERED.


                                        s/Lawrence P. Zatkoff
                                        LAWRENCE P. ZATKOFF
                                        UNITED STATES DISTRICT JUDGE

Dated:  March 10, 2010




CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on March 10, 2010.

s/Marie E. Verlinde
Case Manager
(810) 984-3290

S:\Zatkoff\Marie ECF\park west.motions in limine 3rd group.wpd